# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ESTATE OF ALI HUSSAMALDEEN ALBAZZAZ )<br><br>Plaintiff, )<br>v. )<br><br>BLACKWATER LODGE AND TRAINING CENTER, INC., *et al.*, )<br><br>Defendants. ) | Case No. 07-cv-2273 (RBW) |

)
)
)
)
)
)
)
)
)
)
)

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Plaintiff hereby moves the Court pursuant to Rules 15(a), 20 and 21 of the Rules of Civil Procedure for leave to amend his complaint. As set forth in the accompanying memorandum of points and authorities, the proposed First Amended Complaint adds the Estate of Kadhum Kayiz Aziz.  Mr. Aziz was shot and killed by Blackwater during the September 9, 2007, massacre.

Plaintiff respectfully requests that the Court grant leave to amend their complaint in order to join this additional Plaintiff. A proposed Order is attached.

Date: March 28, 2008

_____*/s/ Susan L. Burke*_____
Susan L. Burke (D.C. Bar # 414939)
William T. O'Neil (D.C. Bar # 426107)
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
Telephone:    (215) 971-5058
Facsimile:    (215) 482-0874

Michael Ratner
Katherine Gallagher
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:     (212) 614-6455
Facsimile:     (212) 614-6499

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
888 West Big Beaver
Suite 910
Troy, MI 48084
Telephone:     (248) 269 -9595
Facsimile:      (248) 269-9119

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ESTATE OF ALI HUSSAMALDEEN ALBAZZAZ | ) ) ) |
| Plaintiff, | ) Case No. 07-cv-2273 (RBW) ) |
| v. | ) ) |
| BLACKWATER LODGE AND TRAINING CENTER, INC., *et al*., | ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF
PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

On September 9, 2007, Blackwater gunned down at least five innocent persons and shot and injured numerous others. Plaintiff's motion for leave to amend simply seeks (pursuant to Fed.R.Civ.P. 20, 21 and 15(a)) to amend the complaint to add an additional party, the Estate of Mr. Aziz. Such joinder does not prejudice Blackwater in any way, and serves the interests of justice.

**STATEMENT OF FACTS**

On September 9, 2007, heavily armed Blackwater mercenaries (known in Blackwater parlance as "shooters") working in Baghdad, Iraq began firing, without justification, on a crowd of innocent Iraqis in and around Al Watahba Square. One of the persons shot and killed was Kadhum Kayiz Aziz, a 36-year old resident of Baghdad and the father of one child. His Estate is seeking to become a plaintiff.

**ARGUMENT**

Plaintiff's motion to amend the Complaint to join the estate of an additional victim killed during Blackwater's September 9, 2007, massacre should be granted. Here, the estate clearly meets the "permissive joinder" requirements of Fed.R.Civ.P. 20(a). That rule allows persons to join an ongoing action if their right to relief arises out of the same transaction or occurrence, and will be considered under the same legal standard. All the deaths and serious injuries arise out of Blackwater's unprovoked massacre in and around Al Watahba Square on September 9, 2007. The same facts and the same law will be relevant to the joining party as to the current party.

Such joinder does not prejudice Blackwater in any way because Blackwater has not yet answered the complaint, and discovery has not yet begun. Rule 21 of the Federal Rules of Civil Procedure provides that "[p]arties may be dropped or added on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21. Joinder is liberally granted and highly flexible. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966) (noting that Rule 20(a) encourages joinder); *Disparte v. Corporate Executive Board*, 223 F.R.D. 7, 10 (D.C. Cir. 2004)( noting "[t]he well-established policy underlying permissive joinder is to promote trial convenience and expedite the resolution of lawsuits.").

In conclusion, given that Fed.R.Civ.P.15(a) requires that leave to amend shall be "freely given when justice so requires," Plaintiffs respectfully request that the Court grant them leave to amend the complaint to join the estate of an additional victim. Such amendment is neither futile nor unduly prejudicial to Blackwater. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

A proposed Order and the First Amended Complaint are attached.

Date: March 28, 2008                    __/s/ Susan L. Burke_____ _____
                                        Susan L. Burke (D.C. Bar # 414939)
                                        William T. O'Neil (D.C. Bar # 426107)
                                        BURKE O'NEIL LLC
                                        4112 Station Street
                                        Philadelphia, PA 19127
                                        Telephone:    (215) 971-5058
                                        Facsimile:    (215) 482-0874

                                        Michael Ratner
                                        Katherine Gallagher
                                        CENTER FOR CONSTITUTIONAL
                                        RIGHTS
                                        666 Broadway, 7th Floor
                                        New York, NY 10012
                                        Telephone:    (212) 614-6455
                                        Facsimile:    (212) 614-6499

                                        Shareef Hadi Akeel
                                        AKEEL & VALENTINE, P.C.
                                        888 West Big Beaver
                                        Suite 910
                                        Troy, MI 48084
                                        Telephone:    (248) 269 -9595
                                        Facsimile:     (248) 269-9119

                                        *Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ESTATE OF ALI HUSSAMALDEEN ALBAZZAZ,<br><br>        Plaintiff,<br>v.<br><br>BLACKWATER LODGE AND TRAINING CENTER, INC., *et al*.,<br><br>        Defendants. | )<br>)<br>)<br>) Case No. 07-cv-2273 (RBW)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### CERTIFICATE OF CONFERENCE

Plaintiffs' counsel conferred with defense counsel regarding Plaintiffs' Motion for Leave to Amend.  Defendants oppose the motion.


_/s/ William T. O'Neil_____
William T. O'Neil

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ESTATE OF ALI HUSSAMALDEEN ALBAZZAZ | ) ) ) |
| Plaintiff, | ) Case No. 07-cv-2273 (RBW) ) |
| v. | ) ) |
| BLACKWATER LODGE AND TRAINING CENTER, INC., *et al*., | ) ) ) |
| Defendants. | ) ) |

## [PROPOSED] ORDER

Upon consideration of the Motion for Leave to Amend, it is hereby ORDERED that the

Motion be and hereby is GRANTED.

Dated:_____

_____
The Honorable Reginald B. Walton
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Estate of Ali Hussamaldeen Albazzaz<br>Baghdad, Iraq | Case No. 07-cv-2273 (RBW) |
| Estate of Kadhum Kayiz Aziz<br>Baghdad, Iraq | |
| Plaintiffs, | JURY DEMAND |
| v. | |
| Blackwater Lodge and Training Center, Inc.<br>850 Puddin Ridge Road<br>Moyock, North Carolina 27958 | |
| Blackwater Security Consulting, LLC<br>850 Puddin Ridge Road<br>Moyock, North Carolina 27958 | |
| Blackwater Armor and Targets, LLC<br>850 Puddin Ridge Road<br>Moyock, North Carolina 27958 | |
| Blackwater Airships, LLC<br>850 Puddin Ridge Road<br>Moyock, North Carolina 27958 | |
| Blackwater Logistics, LLC<br>850 Puddin Ridge Road<br>Moyock, North Carolina 27958 | |
| Raven Development Group, LLC<br>850 Puddin Ridge Road<br>Moyock, North Carolina 27958 | |
| Greystone Limited<br>Total Intelligence Solutions, LLC<br>1650 Tysons Boulevard<br>Suite 800<br>McLean, Virginia 22102 | |
| The Prince Group LLC<br>1650 Tysons Boulevard<br>Suite 800<br>McLean, Virginia 22102 | |

|                                          |   |
|------------------------------------------|---|
| EP Investments, LLC                      | ) |
| 1650 Tysons Boulevard                    | ) |
| Suite 800                                | ) |
| McLean, Virginia 22102                   | ) |
|                                          | ) |
| Erik Prince                              | ) |
| 1650 Tysons Boulevard                    | ) |
| Suite 800                                | ) |
| McLean, Virginia 22102                   | ) |
|                                          | ) |
|                                          | ) |
|                  Defendants.             |   |

## FIRST AMENDED COMPLAINT

1.     This action is being brought against the individual and corporate entities which operate under the name "Blackwater." Blackwater in all of its various corporate incarnations is actually a single private company wholly owned and personally controlled by a man named Erik Prince.  Blackwater earns billions of dollars selling mercenary services.

2.     On September 9, 2007, heavily-armed Blackwater mercenaries (known in Blackwater parlance as "shooters") working in Iraq fired, without justification, on a crowd of innocent Iraqi persons in and around Al Watahba Square resulting in multiple deaths and injuries.  Plaintiffs Ali Hussamaldeen Ibrahim Albazzaz and Kadhum Kayiz Aziz were among those killed in this massacre.  This senseless slaughter on September 9, 2007, was only one in a series of recent incidents in Blackwater's lengthy pattern of egregious misconduct in Iraq resulting in the deaths of innocent Iraqis.

3.     Blackwater created and fostered a culture of lawlessness amongst its employees, encouraging them to act in the company's financial interests at the expense of innocent human life.  This action seeks compensatory damages to compensate the family of Mr. Albazzaz and Mr. Aziz, who were gunned down and killed by Blackwater

shooters.  This action seeks punitive damages in an amount sufficient to punish Erik

Prince and his Blackwater companies for their repeated callous killing of innocents.

## PARTIES

4.     Plaintiff is the Estate of Ali Hussamaldeen Ibrahim Albazzaz.  Mr.

Albazzaz was a resident of Baghdad until he was shot to death by Blackwater shooters on

September 9, 2007.   He was the father of a newborn baby daughter.

5.     Plaintiff is the Estate of Kadhum Kayiz Aziz. Mr. Aziz was a resident

Baghdad until he was shot to death by Blackwater shooters while guarding a government

building on September 9, 2007.  He was the father of one child.

6.     Erik Prince, a resident of McLean, Virginia, with business offices at 1650

Tysons Boulevard, McLean, Virginia, 22102, personally and wholly owns holding

companies known as The Prince Group and EP Investments LLC.  Mr. Prince, through

these holding companies, owns and controls the various Blackwater entities, as well as

entities known as Greystone and Total Intelligence.

7.     Defendant The Prince Group LLC is a holding company located at 1650

Tysons Boulevard, McLean, Virginia, 22102.

8.     Defendant EP Investments, LLC, is a holding company managed by the

Prince Group, LLC.   EP Investments, LLC is located at  1650 Tysons Boulevard,

McLean, Virginia, 22102.

9.     Erik Prince, acting through a web of companies operating under the

"Blackwater" or "Greystone" or "Total Intelligence" names, earns billions of dollars

providing mercenaries (known as "shooters") for hire.  These many entities do not

operate with independence, but rather are all owned and personally controlled by Erik

Prince acting through the vehicle of The Prince Group LLC and/or EP Investments, LLC.

10.     Blackwater Lodge and Training Center, Inc., Blackwater Target Systems,

Blackwater Security Consulting, and Raven Development Group are located at 850

Puddin Ridge Road, Moyock, North Carolina 27958.

11.     Defendant Greystone Ltd. and Total Intelligence Solutions LLP are

companies through which Erik Prince conducts his mercenary business.  Greystone Ltd.

and Total Intelligence Solutions LLP are located at 1650 Tysons Boulevard, McLean,

Virginia, 22102.

12.     Blackwater and its related entities are registered to do business in

Delaware, Michigan, Virginia, Louisiana, North Carolina, Georgia, Texas, Connecticut,

Florida, Montana, and California.

13.     Reasonable discovery will establish that Erik Prince and his web of

wholly-owned companies routinely conduct business and enter into contracts in this

District.   Erik Prince and his web of wholly-owned companies earn substantial sums

doing business in this District.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity jurisdiction);

28 U.S.C. § 1350 (Alien Tort Statute); and 28 U.S.C. § 1367 (supplemental jurisdiction).

15.     Venue is proper pursuant to 28 U.S.C. § 1391(a)(3) and § 1391(b)(2).

**BLACKWATER KILLED PLAINTIFFS AND KILLED AND INJURED OTHER INNOCENT BYSTANDERS ON SEPTEMBER 9, 2007**

16.     Blackwater provides armed forces to protect Department of State personnel in Iraq.  These mobile armed forces that accompany diplomats and others in need of protection are consistently referred to by Blackwater management and employees as "shooters."

17.     On or about September 9, 2007, Blackwater shooters shot, without justification, and killed five innocent persons, including Ali Hussamaldeen Ibrahim Albazzaz and Kadhum Kyiz Aziz, in and around Al Watahba Square. Mr. Albazzaz was standing outside his rug store near Al Watahba Square when he was gunned down by Blackwater shooters. Mr. Aziz was guarding a government building when he was gunned down by Blackwater shooters. Numerous other innocent persons were killed and injured in the incident.

18.     Blackwater is responsible for the reckless actions of its heavily-armed shooters acting in Iraq.  The identities of the Blackwater shooters who killed and injured innocent persons on September 9, 2007, are known to Blackwater and able to be discovered in this litigation.

**BLACKWATER PERMITS AND ENCOURAGES EXCESSIVE AND UNNCESSARY USE OF DEADLY FORCE**

19.     Blackwater has a pattern and practice of recklessness in the use of deadly force.

20.     Blackwater has created and fostered a corporate culture in which excessive and unnecessary use of deadly force by its employees is not investigated or punished in any way.

21.    Blackwater routinely sends heavily-armed "shooters" into the streets of Baghdad with the knowledge that some of those "shooters" are chemically influenced by steroids and other judgment-altering substances.

22.    Blackwater knew that 25 percent or more of its "shooters" were ingesting steroids or other judgment-altering substances, yet failed to take effective steps to stop the drug use.

23.    Blackwater did not conduct any drug-testing of its "shooters" before sending them equipped with heavy weapons into the streets of Baghdad.

24.    An Army lieutenant colonel serving in Iraq made the following statement about Blackwater forces to a Washington Post reporter:  "They are immature shooters and have very quick trigger fingers.  Their tendency is to shoot first and ask questions later."

25.    Another senior United States commander serving in Iraq made the following statement about Blackwater forces to Washington Post reporter:  "They often act like cowboys over here,. . .  not seeming to play by the same rules everyone else tries to play by."   He further stated that they have a "record of recklessness."

26.    Blackwater produced to the Congressional Committee on Oversight and Government Reform ("the Committee") approximately 437 internal "incident reports" that reveal that Blackwater forces in Iraq consistently use excessive and unnecessary force that results in unnecessary deaths, injuries and property damage.

27.    Blackwater forces consistently and routinely engage in the preemptive and offensive, rather than defensive, use of lethal force.  Blackwater's own incident reports

reveal that Blackwater forces fire first in 84 percent of the self-reported incidents involving gunfire.

28.    A few examples of Blackwater's recklessness suffice:  On or about September 16, 2007, just days after this incident, Blackwater shooters gunned down innocent Iraqi persons in Nisoor Square, killing 16 and injuring numerous others. The Blackwater shooters opened fire on innocent Iraqi persons in cars and on foot without any provocation. They maintained heavy gunfire, including firing from helicopters, for approximately 15 minutes.  During this one week in September, Blackwater shooters shot at least 43 innocent Iraqis, at least 21 of whom died.

29.    On or about December 24, 2006, Blackwater killed the bodyguard of Iraqi Vice President Adil Abd-al-Mahdi.  Blackwater killed the bodyguard by firing multiple shots from a Glock 9 mm pistol directly at him.  The New York Times reported that the Blackwater employee who killed the bodyguard is named Andrew J. Moonen.

30.    On or about June 25, 2005, Blackwater forces killed an innocent person standing on the side of the street by shooting him in the chest.  He was the father of six children.  Blackwater initially failed to report the shooting, and subsequently tried to cover it up.

31.    Reasonable discovery is likely to produce evidence of additional killings by Blackwater shooters.  Reasonable discovery is also likely to produce evidence that Blackwater on one or more occasions attempted to cover up its shooters' killings by offering to pay modest sums to the families of those Iraqis whom Blackwater shooters shot for no reason.

32.     The Blackwater reports produced to the Committee reveal that Blackwater shooters in Iraq repeatedly and frequently fire shots from moving vehicles without stopping to see if Blackwater has killed anyone.

33.     The Blackwater reports produced to the Committee reveal that Blackwater shooters and other employees repeatedly fail to report wrongful use of force, and consistently lie about excessive uses of force.

34.     Reasonable discovery will establish that Blackwater significantly and consistently underreports excessive use of force by its employees in its own documentation.  Two former Blackwater employees told a Washington Post reporter that the Blackwater documents produced to the Committee significantly underreported the actual number of shootings.  One of these former Blackwater shooters stated that his 20-person team in Iraq averaged four to five shootings per week.

35.     Blackwater profits financially from its pattern and practice of misuse of deadly force.

36.     Reasonable discovery will establish that Blackwater heavily markets the fact that it has never had any American official under its protection killed in Iraq. Reasonable discovery will establish that Blackwater views its willingness to kill innocent people as a strategic advantage setting Blackwater apart and above other security companies.

37.     Reasonable discovery will establish Blackwater was and is willing to kill innocent bystanders in order to preserve that "no death" statistic for marketing purposes. Blackwater benefits financially from its willingness to kill innocent bystanders.

## BLACKWATER HIRES INDIVIDUALS
## KNOWN TO BE CRIMINALS

38.     Blackwater, in addition to hiring persons known (or should have been known) to use steroids and other judgment-altering drugs, has been hiring as mercenaries former military officials known to have been involved in human rights abuses in Chile. As reasonable discovery will establish, Blackwater knows that the former Chileans commandos hired by Blackwater received amnesty from punishment for their wanton disregard of human rights in exchange for being forbidden from taking part in any military or security activities in Chile.

39.     Reasonable discovery is also likely to reveal that Blackwater has been hiring mercenaries from the Philippines, Chile, Nepal, Colombia, Ecuador, El Salvador, Honduras, Panama, Peru, Bulgaria, Poland, Romania, Jordan and perhaps South Africa. Reasonable discovery is likely to reveal that Blackwater hired foreign nationals without regard for the fact that they were forbidden by the laws of their country from serving as mercenaries.

40.     Blackwater retains a sufficient number of mercenaries to be able to provide a willing buyer with a private army.

41.     In 2003, Blackwater president Gary Jackson stated publicly Blackwater's vision: "I would like to have the largest, most professional private army in the world."

42.     In March 2006, during a conference held in Amman, Jordan, Blackwater executive Cofer Black publicly declared that Blackwater was able to deploy a private brigade-sized force to any conflict or crisis zone.

## BLACKWATER ACTIONS HARM THE UNITED STATES

43.     Secretary of Defense William Gates has publicly announced that private mercenary companies, including Blackwater, are interfering with the military's ability to retain trained soldiers because the companies entice soldiers to leave military service with offers of higher pay.

44.     Blackwater's recent shooting incidents are being investigated by the United States Department of Justice, United States Federal Bureau of Investigation and the Iraqi government.

45.     Blackwater's recent actions in Iraq have created serious and substantial difficulties for the United States' diplomatic relationship with Iraq.

46.     Blackwater is being investigated by Congressional Committee on Oversight and Government Reform.

47.     Blackwater is being investigated by the United States Attorney, Department of Justice, and the Attorney General of North Carolina.  According to press reports, Blackwater is being investigated for having been involved in smuggling weapons into Iraq, which subsequently ended up in the hands of persons designated as terrorists by the United States government.

48.     Two Blackwater employees have pleaded guilty to possessing stolen weapons.  These Blackwater employees agreed to cooperate with the United States in investigation of these crimes.

49.     Blackwater is harming the United States by its repeated and consistent failure to act in accord with the law of war, the laws of the United States, and international law.

50.     Blackwater has earned more than one billion dollars (approximately $1,024,519,018) from the United States during the years 2001 to 2006.  Reasonable discovery is likely to establish that Blackwater continues to earn millions of dollars in revenue from the United States.

51.     The United States paid Blackwater these substantial sums based on Blackwater's misrepresentations that it was a legitimate company able to conduct itself in a lawful manner.  But in fact, Blackwater operates extra-legally, providing heavily-armed mercenaries who flout the laws of this nation and the host nation, Iraq.

52.     Blackwater encourages and fosters a culture of lawlessness and a lack of respect for the lives of innocent Iraqi persons amongst its employees.

53.     Blackwater's actions and omissions resulted in unnecessary carnage and harmed the reputation of the United States throughout the world.

## BLACKWATER DOES NOT HAVE A VALID CONTRACT WITH THE UNITED STATES

54.     The Anti-Pinkerton Act, 5 U.S.C. § 1803, prohibits the United States from doing business with "[a]n individual employed by the Pinkerton Detective Agency, or similar organization."  The legislative history of the Act makes it clear that a "similar organization" means any mercenary or quasi-mercenary organization.

55.     Blackwater constitutes such a "similar organization" and therefore lacks any valid contractual relationships with the United States.

**ERIK PRINCE OPERATES AND CONTROLS THE VARIOUS BLACKWATER
ENTITIES AS HIS ALTER EGOS**

56.     Erik Prince and Al Clark jointly founded Blackwater.  However,
reasonable discovery will establish that Al Clark departed Blackwater in 2000 because
Erik Prince was not willing to maintain reasonable standards of professionalism.

57.     Reasonable discovery is also likely to establish that subsequent to Al
Clark's departure, Erik Prince assumed complete and total control over Blackwater's
operations.

58.     Reasonable discovery is likely to establish that the various Blackwater
corporate entities were formed merely to reduce legal exposures and do not operate as
individual and independent companies outside the control of Erik Prince.

59.     Reasonable discovery is likely to establish that the Prince Group LLC was
formed merely to shield Erik Prince from any legal and financial consequences for his
reckless indifference to the laws of this and other nations.

**DAMAGES**

60.     Defendants are liable for killing Ali Hussamaldeen Ibrahim Albazzaz and
Kadhum Kayiz Aziz. Defendants are liable for the pain and suffering caused to Mr.
Albazzaz and Mr. Aziz, as well as the pain and suffering and loss of consortium caused to
their family members.

61.     Plaintiffs seek compensatory and punitive damages in an amount in excess
of the jurisdictional amount set forth in 28 U.S.C. § 1332.  Plaintiffs also seek any and all
additional remedies (such as attorneys' fees) available under law and equity.

## COUNT ONE
## CLAIM UNDER THE ALIEN TORT STATUTE – WAR CRIMES

62.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

63.     Defendants' acts were deliberate, willful, intentional, wanton, malicious and    oppressive and constitute war crimes.

64.     Defendants' acts took place during a period of armed conflict.

65.     Defendants committed war crimes against the Plaintiffs.

66.     Defendants are liable for their conduct that constitutes war crimes.

67.     Defendants' misconduct caused grave and foreseeable injuries to the Plaintiffs.

## COUNT TWO
## ASSAULT AND BATTERY

68.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

69.     Defendants unlawfully intended to and did inflict immediate injury upon Plaintiffs.

70.     Defendants intentionally assaulted, battered, and made other offensive contacts; and aided and abetted the assaulting, battering and offensively contacting, of the Plaintiffs.

71.     Plaintiffs did not consent to the offensive contacts. Plaintiffs feared for their personal safety and felt threatened by Defendants' actions.

72.     Defendants committed the assaults and batteries.

73.     Defendants' acts caused grave and foreseeable damages to Plaintiffs.

**COUNT THREE**
**WRONGFUL DEATH**

74.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

75.    Defendants' wrongful acts and omissions caused the death of Ali Hussamaldeen Ibrahim Albazzaz and Kadhum Kayiz Aziz.

76.    Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to act in the manner that led to the wrongful death.

77.    The death of Ali Hussamaldeen Ibrahim Albazzaz, Kadhum Kayiz Aziz and other persons were the foreseeable result of Defendants' wrongful acts and omissions.

**COUNT FOUR**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

78.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

79.    Defendants intentionally inflicted severe emotional distress by way of extreme and outrageous conduct on Plaintiffs and their family members.  Defendants intended or recklessly disregarding the probability that Plaintiffs would suffer emotional distress when directing offensive conduct toward Plaintiffs.

80.    Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to inflict emotional distress on Plaintiffs.

81.     Defendants' acts caused grave and foreseeable injuries to Plaintiffs and their family members.

## COUNT FIVE
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

82.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

83.     Defendants negligently inflicted severe emotional distress on Plaintiffs and their family members.

84.     Defendants breached a duty to Plaintiffs and others present at the scene of the killings and infliction of bodily injury.

85.     Defendants' negligence directly and foreseeably harmed Plaintiffs.

## COUNT SIX
## NEGLIGENT HIRING, TRAINING AND SUPERVISION

86.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

87.     Defendants acted negligently and directly harmed Plaintiffs by:

(a)     failing to take the appropriate steps in hiring proper personnel to perform services;

(b)     failing to properly screen personnel before their hiring;

(c)     failing to train personnel properly;

(d)     failing to investigate allegations of wrongdoing;

(e)     failing to adequately monitor for and stop illegal substance abuse;

(f)     failing to reprimand for wrongful actions; and

(g)     negligently permitting repeated lawlessness by employees.

88.     Defendants' negligence directly and foreseeably harmed Plaintiffs and their family members.

## PRAYER FOR DAMAGES

89.     Plaintiffs and their family members, acting through their Estates, are entitled to any and all remedies available to them as a result of the conduct alleged herein, including, but not limited to:

(a)     compensatory damages for death, physical, mental and economic injuries;

(b)     punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant misconduct and callous disregard for human life; and

(c)     any attorneys' fees and costs permitted by law.


Date:  March 28, 2008                    _____/s/ Susan L. Burke_____
                                          Susan L. Burke (D.C. Bar # 414939)
                                          William T. O'Neil (D.C. Bar # 426107)
                                          Elizabeth M. Burke
                                          Rosemary B. Healy
                                          Katherine R. Hawkins
                                          BURKE O'NEIL LLC
                                          4112 Station Street
                                          Philadelphia, PA 19127
                                          Telephone:    (215) 971-5058
                                          Facsimile:    (215) 482-0874

                                          Michael A.Ratner
                                          Katherine Gallagher
                                          CENTER FOR CONSTITUTIONAL RIGHTS
                                          666 Broadway, 7th Floor
                                          New York, NY 10012
                                          Telephone:    (212) 614-6455
                                          Facsimile:    (212) 614-6499

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
888 West Big Beaver
Suite 910
Troy, MI 48084
Telephone:     (248) 269 -9595
Facsimile:      (248) 269-9119

*Counsel for Plaintiffs*