**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ESTATE OF HIMOUD SAED ABTAN**, *et al.* | ) | |
| | ) | Civil Case No. **1:07-cv-01831 (RBW)** |
| Plaintiffs, | ) | (Lead Case) |
| | ) | |
| v. | ) | |
| | ) | |
| **BLACKWATER LODGE AND TRAINING** | ) | |
| **CENTER**, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| **ESTATE OF ALI HUSSAMALDEEN** | ) | |
| **ALBAZZAZ**, *et al.* | ) | |
| | ) | Civil Case No. **07-cv-02273 (RBW)** |
| Plaintiffs, | ) | (Consolidated Case) |
| | ) | |
| v. | ) | |
| | ) | |
| **BLACKWATER LODGE AND TRAINING** | ) | |
| **CENTER**, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF VENUE THE SECOND AMENDED COMPLAINT IN CASE NO. 1:07-CV-01831 AND THE AMENDED COMPLAINT IN CASE NO. 07-CV-02273

Defendants Blackwater Lodge and Training Center, Inc.; Blackwater Security Consulting, LLC; Blackwater Armor and Targets, LLC; Blackwater Airships, LLC; Blackwater Logistics, LLC; Raven Development Group, LLC; Greystone Limited; Prince Group LLC; EP Investments, LLC; and Erik Prince (collectively, "Defendants"), pursuant to 28 U.S.C. § 1406(a) and Fed. R. Civ. P. 12(b)(3) move for dismissal of Plaintiffs' Second Amended Complaint in *Estate of Himoud Saed Abtan v. Blackwater Lodge and Training Center*, No. 1:07-cv-01831, and the

Amended Complaint in *Estate of Ali Hussamaldeen Albazzaz v. Blackwater Lodge and Training Center*, No. 07-cv-02273, for lack of venue.  In the alternative, Defendants move for the transfer of these consolidated cases to the Eastern District of Virginia.

As required by Local Rule 7(a), the reasons supporting this Motion are set forth in the attached Defendants' Memorandum in Support of Their Motion to Dismiss for Lack of Venue the Second Amended Complaint in Case No. 1:07-cv-01831 and the Amended Complaint in Case No. 07-cv-02273.[1]  A Proposed Order is attached as required by Local Rule 7(c).  Defendants have served counsel for Plaintiffs with copies of this Motion, the Memorandum and its supporting documents, and the Proposed Order.

Respectfully submitted,

/s/ Michael Lackey
Michael Lackey  (#443362)
Andrew Pincus (#370726)
Peter White  (#468746)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

*Counsel for Defendants*

Dated: April 8, 2008

---

[1]    We note that Plaintiffs have not yet filed an Amended Complaint in Albazzaz as this Court has granted leave to do.  We therefore request that the Court consider this motion and supporting papers, with respect to Albazzaz, as anticipating Plaintiff's Amended Complaint. All citations to the Albazzaz Amended Complaint are to the Proposed Amended Complaint appended to Plaintiffs' Motion for Leave to File an Amended Complaint, Albazzaz Dkt. No. 16.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ESTATE OF HIMOUD SAED ABTAN**, *et al.* | ) | |
| | ) | Civil Case No. **1:07-cv-01831 (RBW)** |
| Plaintiffs, | ) | (Lead Case) |
| | ) | |
| v. | ) | |
| | ) | |
| **BLACKWATER LODGE AND TRAINING CENTER**, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| **ESTATE OF ALI HUSSAMALDEEN ALBAZZAZ**, *et al.* | ) | |
| | ) | |
| | ) | Civil Case No. **07-CV-02273 (RBW)** |
| Plaintiffs, | ) | (Consolidated Case) |
| | ) | |
| v. | ) | |
| | ) | |
| **BLACKWATER LODGE AND TRAINING CENTER**, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF VENUE THE SECOND AMENDED COMPLAINT IN CASE NO. 1:07-CV-01831 AND THE AMENDED COMPLAINT IN CASE NO. 07-CV-02273

Michael Lackey  (#443362)
Andrew Pincus (#370726)
Peter White  (#468746)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000
*Counsel for Defendants*

Dated: April 8, 2008

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................ii

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

    I.   Plaintiffs provide no basis for venue in the District of Columbia. .................................... 2

        A.   Section 1391(a)(3) is inapplicable because these suits are not based solely on diversity jurisdiction. ........................................................................................................... 2

        B.   Section 1391(b)(2) is inapplicable because no substantial part of the events or omissions giving rising to Plaintiffs' claims occurred in the District of Columbia................ 3

    II.   Venue would be proper in the Eastern District of Virginia. ................................................ 5

        A.   The non-alien corporate Defendants reside in Virginia. .................................................. 6

        B.   The individual Defendant (Erik Prince) resides in Virginia. ........................................... 9

        C.   The alien corporate Defendant does not affect the venue analysis. ............................... 10

    III.   Dismissal of all claims is appropriate. ............................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*\*Adrian v. United States*, No. Civ. A. 04-1721,
 2006 WL 763076 (D.D.C. Mar. 13, 2006)..........................................................................4

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*,
 10 F.3d 425 (7th Cir. 1993) ...................................................................................3

*Beech Aircraft Corp. v. EDO Corp.*,
 Civ. A. No. 90-1518, 1991 WL 133551 (D.D.C. Feb. 15, 1991) .........................................6

*Coté v. Wadel*,
 796 F.2d 981 (7th Cir. 1986) ...............................................................................11

*Devaughn v. Inphonic, Inc.*,
 403 F. Supp. 2d 68 (D.D.C. 2005) ........................................................................7

*English & Smith v. Metzger*,
 901 F.2d 36 (4th Cir. 1990) .................................................................................6

*Eze v. Yellow Cab Co. of Alexandria, Va., Inc.*,
 782 F.2d 1064 (D.C. Cir. 1986) ...........................................................................3

*Freeman v. Fallin*,
 254 F. Supp. 2d 52 (D.D.C. 2003) ........................................................................2

*Friedman v. Revenue Mgmt. of N.Y., Inc.*,
 839 F. Supp. 203 (S.D.N.Y. 1993), *aff'd* 38 F.3d 668 (2d Cir. 1994) ...............................3

*\*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408 (1984)........................................................................................6, 8

*Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*,
 227 F. Supp. 2d 581 (E.D. Va. 2002) ...................................................................7

*Inversiones Inmobiliarias El Bosque, S.A. v. Transtainer Corp.*, No. Civ. A. 03-0962,
 2004 WL 325615 (E.D. La. Feb. 18, 2004) .............................................................8

*Keeton v. Hustler Magazine, Inc.*,
 465 U.S. 770 (1984)..........................................................................................9

*King v. Wall & Beaver St. Corp.*,
 145 F.2d 377 (D.C. Cir. 1944)............................................................................10

*LG Elecs. Inc. v. Advance Creative Computer Corp.*,
 131 F. Supp. 2d 804 (E.D. Va. 2001) ...................................................................7

*Mwani v. Bin Laden*,
  417 F.3d 1 (D.C. Cir. 2005) ..................................................................5

*Nichols v. G.D. Searle & Co.*,
  991 F.2d 1195 (4th Cir. 1993) ............................................................11

*Perkins v. Benguet Consol. Mining Co.*,
  342 U.S. 437 (1952) .............................................................................7

*Prakash v. Am. Univ.*,
  727 F.2d 1174 (D.C. Cir. 1984) .........................................................10

*Ratliff v. Cooper Labs., Inc.*,
  444 F.2d 745 (4th Cir. 1971) ................................................................9

*Rogers v. Metro. & City Police New Scotland Yard of London*,
  Civ. A. No. 91-2124 (CRR), 1992 WL 23669 (D.D.C. Jan. 23, 1992) ............5

*Schmidt v. Am. Inst. of Physics*,
  322 F. Supp. 2d 28 (D.D.C. 2004) ........................................................8

*State Farm Mut. Auto. Ins. Co. v. Bussell*,
  939 F. Supp. 646 (S.D. Ind. 1996) ......................................................4

*U.S. Gen., Inc. v. Draper City*,
  No. 2:05-CV-917 TS, 2006 WL 1594184 (D. Utah June 7, 2006).............9

*United States v. Toushin*,
  714 F. Supp. 1452 (M.D. Tenn. 1989)..................................................5

*Witt v. Reynolds Metals Co.*,
  240 Va. 452 (1990) .......................................................................6, 7, 9

**Statutes**

28 U.S.C. § 1391(a) ........................................................................ *passim*

28 U.S.C. § 1391(b)(1) ..........................................................................6

28 U.S.C. § 1391(b)(2) .................................................................... *passim*

28 U.S.C. § 1391(c) ............................................................................6, 7

28 U.S.C. § 1391(d) .............................................................................10

28 U.S.C. § 1406(a) ......................................................................1, 2, 11

Fed. R. Civ. P. 12(b)(3)..........................................................................1

**Miscellaneous**

4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5
    (Westlaw 2008) ........................................................................................................8

14D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 3805
    (Westlaw 2008) ......................................................................................................10

14D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 3806.1
    (Westlaw 2008) ........................................................................................................4

14D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 3810
    (Westlaw 2008) ......................................................................................................10

14D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 3827
    (Westlaw 2008) ......................................................................................................11

# INTRODUCTION

Blackwater Lodge and Training Center, Inc. ("Blackwater Lodge"); Blackwater Security Consulting LLC ("Blackwater Security"); Blackwater Armor and Targets LLC ("Blackwater Armor"); Blackwater Airships LLC ("Blackwater Airships"); Blackwater Logistics LLC ("Blackwater Logistics"); Raven Development Group LLC ("Raven Development"); Greystone Limited ("Greystone"); Prince Group LLC ("Prince Group"); EP Investments LLC ("EP Investments"); and Erik Prince (collectively, "Defendants"), respectfully submit this Memorandum in Support of Their Motion to Dismiss for Lack of Venue.

This Memorandum establishes grounds for dismissal of the Second Amended Complaint in *Estate of Himoud Saed Abtan v. Blackwater Lodge and Training Center*, No. 1:07-cv-01831, Dkt. No. 18 ("Abtan 2d Am. Cmplt."), and the Amended Complaint in *Estate of Ali Hussamaldeen Albazzaz v. Blackwater Lodge and Training Center*, No. 07-cv-02273 ("Albazzaz Am. Cmplt.").[2]  Pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), all claims should be dismissed because Plaintiffs have again committed an obvious error—for the third time in *Abtan*—by continuing to rely on clearly inapplicable venue provisions and failing to allege any basis whatsoever to satisfy their burden of establishing that venue is proper in this Court.

---

[2]   We note that Plaintiffs have not yet filed an Amended Complaint in Albazzaz as this Court has granted leave to do.  We therefore request that the Court consider this motion and supporting papers, with respect to Albazzaz, as anticipating Plaintiff's Amended Complaint. All citations to the Albazzaz Amended Complaint are to the Proposed Amended Complaint appended to Plaintiffs' Motion for Leave to File an Amended Complaint, Albazzaz Dkt. No. 16.

1

# ARGUMENT

Plaintiffs rely upon two venue provisions, neither of which provides any grounds for venue in this Court.  When venue is defective, 28 U.S.C. § 1406(a) authorizes this Court either to dismiss or to transfer the action.  All Defendants reside for venue purposes in Virginia,[3] and venue would therefore be proper in the Eastern District of that State.  Here, however, because Plaintiffs have repeatedly committed an obvious error in suing without alleging any plausible basis for venue in the District of Columbia, Defendants request that this Court dismiss both complaints.[4]

## I.    Plaintiffs provide no basis for venue in the District of Columbia.

The new complaints fail to establish any basis for venue in this Court.  Plaintiffs have the "obligation to institute the action in a permissible forum," and thus bear "the burden of establishing that venue is proper."  *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).  Here, Plaintiffs rely on two provisions in support of venue in the District of Columbia—28 U.S.C. § 1391(a)(3) and 28 U.S.C. § 1391(b)(2).  Abtan 2d Am. Cmplt. ¶ 30; Albazzaz Am. Cmplt. ¶ 15.  As explained below, neither provision is relevant.

### A.   Section 1391(a)(3) is inapplicable because these suits are not based solely on diversity jurisdiction.

The first provision relied on by Plaintiffs applies to actions "founded ***only*** on diversity of citizenship."  28 U.S.C. § 1391(a) (emphasis added).  It is inapplicable here because Plaintiffs do not rely only on diversity jurisdiction, yet Plaintiffs continue to assert this provision in their new

---

[3]    One Defendant, Greystone, is disregarded for venue purposes because it is an alien.  *See* Part II.C.

[4]    In addition, Defendants note that the new complaints continue to make allegations regarding Total Intelligence Solutions, LLC, which is no longer a Defendant in this case.  Therefore, Defendants respectfully request that this Court strike the references to Total Intelligence in paragraphs 24 and 26 of the Second Amended Complaint in *Abtan* and paragraphs 9 and 11 of the Amended Complaint in *Albazzaz*.

complaints as grounds for venue in this Court.  Abtan 2d Am. Cmplt. ¶ 29 (basing jurisdiction on both diversity and the presence of a federal question); Albazzaz Am. Cmplt. ¶ 14 (same); *see Friedman v. Revenue Mgmt. of N.Y., Inc.*, 839 F. Supp. 203, 206 (S.D.N.Y. 1993) (when "[j]urisdiction * * * is based on diversity and a federal question," Section 1391(a) is "irrelevant for the determination of proper venue"), *aff'd* 38 F.3d 668 (2d Cir. 1994).  Indeed, this provision cannot apply because this Court has no diversity jurisdiction over these cases.  *See Eze v. Yellow Cab Co. of Alexandria, Va., Inc.*, 782 F.2d 1064, 1065 (D.C. Cir. 1986) (per curiam) ("A diversity suit, in line with the *Strawbridge* rule, may not be maintained in federal court by an alien against a citizen of a state and a citizen of some other foreign country.");[5] *see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 428 (7th Cir. 1993) (Posner, J.) (explaining in dicta how such a case does "not fit any of the possibly applicable jurisdictional pigeonholes").

## B.   Section 1391(b)(2) is inapplicable because no substantial part of the events or omissions giving rising to Plaintiffs' claims occurred in the District of Columbia.

The second venue provision cited in the new complaints also provides no basis for venue in this Court.  Section 1391(b)(2) authorizes venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  No property is at issue in either of these cases, and the "events or omissions giving rise" to Plaintiffs' claims are allegedly tortious actions in Iraq, not the District of Columbia—and not even the United States, for that matter:

- In *Albazzaz*, Plaintiffs allege that "[o]n or about September 9, 2007, Blackwater shooters shot, without justification, and killed five innocent persons * * * in and

---

[5]   As discussed in Part II.C, *infra*, Greystone is an alien corporate Defendant.

around Al Watahba Square" and "[n]umerous other innocent persons were killed and injured in the incident," Albazzaz Am. Cmplt. ¶ 17;

- In *Abtan*, Plaintiffs allege that "[o]n or about September 16, 2007, Blackwater shooters shot without justification and killed multiple innocent civilians * * * in and around a traffic circle known as Nisoor Square" and "injured multiple innocent civilians * * * in and around the same location," Abtan 2d Am. Cmplt. ¶¶ 32, 33.

Plaintiffs' claims in these actions arise out of their allegations about events and omissions related to the September 9 and September 16 incidents in Baghdad, ***none*** of which, much less "a substantial part" of which, occurred here in the District of Columbia.  *See* Abtan 2d Am. Cmplt. ¶¶ 85-111 (asserting causes of action for war crimes (count 1), assault and battery (count 2), wrongful death (count 3), intentional infliction of emotional distress (count 4), negligent infliction of emotional distress (count 5), and negligent hiring and training (count 6)); Albazzaz Am. Cmplt. ¶¶ 62-88 (same).[6]

It is black letter law that in tort actions such as these, the "substantial part" venue inquiry focuses on "where the allegedly tortious actions occurred and the place where the harms were felt."  14D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 3806.1 (Westlaw 2008); *see also State Farm Mut. Auto. Ins. Co. v. Bussell*, 939 F. Supp. 646, 650 (S.D. Ind. 1996) (Barker, C.J.) (distinguishing contract and tort suits on this basis under the identical language of Section 1391(a)(2)); *Adrian v. United States*, No. Civ. A. 04-1721, 2006 WL 763076, *2 (D.D.C. Mar. 13, 2006) (Walton, J.) (finding no venue under Section 1391(b)(2) for a *Bivens* claim when "all of the allegedly injurious acts occurred in" another state).

---

[6] The only count for which some of the allegedly tortious acts could conceivably have occurred outside of Iraq is count 6 (negligent hiring, training, and supervision).  Plaintiffs, however, do not assert that ***any*** hiring or training—much less "a substantial part"—took place in the District of Columbia.

4

Because Plaintiffs' claims sound exclusively in tort, and both the alleged tortious actions and the alleged injuries occurred in Iraq, there is simply no basis for venue in this Court under Section 1391(b)(2). *See, e.g*, *Rogers v. Metro. & City Police New Scotland Yard of London*, Civ. A. No. 91-2124 (CRR), 1992 WL 23669, at *1 (D.D.C. Jan. 23, 1992) (finding venue improper in this Court under Section 1391(b)(2) because the "complaint describe[d] no important events giving rise to [plaintiff's] claim which took place in the District of Columbia or property alleged to be located in the District" but rather "describe[d] events occurring mostly in Colorado, California, or overseas").

* * * * *

Plaintiffs have again filed complaints without alleging any plausible basis for venue in this Court. Moreover, because these suits do not rest solely on diversity jurisdiction, and because "a substantial part of the events or omissions giving rise to" Plaintiffs' claims could not possibly have occurred in the District of Columbia, no discovery is needed before this Court dismisses Plaintiffs' complaints. *See Mwani v. Bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005) (upholding a denial of jurisdiction-related discovery because the court could "not see what facts additional discovery could produce that would affect [the] jurisdictional analysis") (internal quotation marks and citation omitted); *see also United States v. Toushin*, 714 F. Supp. 1452, 1460 (M.D. Tenn. 1989) (denying motion for venue-related discovery because the court was disposing of the venue motions and had "no reason to prolong this matter with unnecessary discovery"). This Court should therefore dismiss the complaints in both *Abtan* and *Albazzaz* for lack of venue.

## II.    Venue would be proper in the Eastern District of Virginia.

Given the allegations in Plaintiffs' complaints, venue would be proper in the Eastern District of Virginia ("E.D. Va."). Indeed, Plaintiffs have already conceded that venue is proper in

E.D. Va.  Abtan Pls. Opp. 5, Albazzaz Pls. Opp. 5-6.  Under Section 1391(b)(1)—which Plaintiffs do not cite in their complaints—venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State."  As demonstrated below, all Defendants reside in Virginia and thus venue is proper in E.D. Va. under Section 1391(b)(1).  Nevertheless, Defendants submit that these consolidated cases should be dismissed, not transferred to E.D. Va., for the reasons given below.  *See* Part III, *infra*.

### A.    The non-alien corporate Defendants reside in Virginia.

The Defendants who are non-alien corporations reside in Virginia.  For venue purposes, a corporation resides in any judicial district in which "it is subject to personal jurisdiction."  28 U.S.C. § 1391(c).  To be subject to personal jurisdiction in Virginia, each Defendant must have "continuous and systematic" contacts with the State.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (providing the standard for general personal jurisdiction).  This constitutional minimum is the relevant standard, for Virginia law[7] extends general personal jurisdiction as far as the federal Constitution permits.  *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990); *Witt v. Reynolds Metals Co.*, 240 Va. 452, 454-56 (1990).

Each non-alien corporate Defendant has the requisite "continuous and systematic" contacts with the State of Virginia:

1.    Prince Group and  EP Investments have their respective principal places of business in Virginia.  The location of a corporation's principal place of business is conclusive evidence that it is subject to general personal jurisdiction.  *See Perkins v. Benguet Consol. Mining Co.*,

---

[7]    Virginia law determines whether Defendants have sufficient contacts with Virginia to support general jurisdiction, and thus to make federal venue proper under Section 1391(b)(1) and Section 1391(c).  *Beech Aircraft Corp. v. EDO Corp.*, Civ. A. No. 90-1518, 1991 WL 133551, at *2 (D.D.C. Feb. 15, 1991) ("Whether personal jurisdiction could be established over [the defendant] in the federal courts of Kansas is determined with reference to Kansas law.").

342 U.S. 437, 447-48 (1952) (finding general personal jurisdiction where the principal place of business had temporarily relocated because of the Second World War); *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 72 (D.D.C. 2005) (finding a corporation subject to personal jurisdiction where its principal place of business was located); *Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*, 227 F. Supp. 2d 581, 582 n.3 (E.D. Va. 2002) ("[I]t is indisputable that venue would be proper in the Eastern District of Pennsylvania because Defendant has its principal place of business in Pennsylvania and is therefore subject to personal jurisdiction therein pursuant to 28 U.S.C. § 1391(c)."); *LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 813 (E.D. Va. 2001) ("General jurisdiction exists over resident defendants with their principal place of business in the jurisdiction."); *Witt*, 240 Va. at 455 ("A foreign corporation * * * which has its principal place of business in the forum * * * may be subjected to personal jurisdiction there.").

Both Defendants have the requisite contacts, because each has its principal place of business in Virginia. The principal place of business of Prince Group and EP Investments is an approximately 10,000 square feet office located at 1650 Tysons Blvd., McLean, Virginia 22102 ("the McLean Site"). Schmitz Decl., Ex. A, ¶ 4; Prince Decl., Ex. B, ¶ 5. All Prince Group employees work at the McLean Site. Schmitz Decl., Ex. A, ¶ 5. Plaintiffs themselves recognize that these Defendants are based in E.D. Va. *See* Abtan 2d Am. Cmplt. ¶¶ 22, 23, 26; Albazzaz Am. Cmplt. ¶¶ 7, 8, 11.

2. The remaining non-alien corporate Defendants—Blackwater Lodge, Blackwater Security, Blackwater Armor, Blackwater Airships, Blackwater Logistics, and Raven Development—also reside in Virginia.

First, several of these Defendants have offices in Virginia.  Roitz Decl., Ex. D, ¶¶ 9, 22 (Blackwater Lodge, Blackwater Security); Matthews Decl., Ex. E, ¶ 5 (Blackwater Armor).  This fact alone is sufficient to establish that these Defendants are subject to general personal jurisdiction.  *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 32 n.1 (D.D.C. 2004); *see* 4 WRIGHT & MILLER § 1067.5 ("[T]he defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or ***maintaining one or more offices*** there * * *.") (emphasis added); *see also Helicopteros Nacionales de Colombia*, 466 U.S. at 416 (finding no general jurisdiction and emphasizing that defendant did "not have a place of business" in the state).

Second, Blackwater Lodge, Blackwater Security, and Raven Development are authorized to do business in Virginia.  Roitz Decl., Ex. D, ¶¶ 7, 20; Matthews Decl., Ex. E, ¶ 17.  This is strong evidence that they are subject to general personal jurisdiction within the State.  *Helicopteros Nacionales de Colombia*, 466 U.S. at 416 (finding no general jurisdiction and emphasizing that defendant "never ha[d] been licensed to do business in the State"); *Inversiones Inmobiliarias El Bosque, S.A. v. Transtainer Corp.*, No. Civ. A. 03-0962, 2004 WL 325615, at *3 (E.D. La. Feb. 18, 2004) (finding general personal jurisdiction under both Louisiana law and the federal Constitution where defendant was "authorized to do business in Louisiana, ha[d] appointed an agent for service of process, ha[d] solicited business in Louisiana, and ha[d] maintained an office in Kenner, Louisiana").

Finally, all of these Defendants have other "continuing and systematic" contacts with the State.  Blackwater Lodge is the corporation that leases the McLean Site.  Roitz Decl., Ex. D, ¶ 9. Blackwater Lodge and Blackwater Security have a host of contacts that meet the "continuous and systematic" test, including contracts with and frequent visits to the State Department's Office of

Acquisition Management, which is located in Arlington, Virginia. *E.g.*, *id.* ¶¶ 7–14, 20–26. Virginia is one of the major places of business for Blackwater Logistics, and a significant amount of its cargo shipments involve Virginia ports. Matthews Decl., Ex. E, ¶ 14. Virginia is also a major place of business for Raven Development, and its business contacts with the State include development of a $10 million auto-auction facility. *Id.* ¶¶ 19–21. Moreover, the non-alien corporate Defendants routinely conduct business in Virginia with clients and strategic part-ners or owners (such as other Defendants and Mr. Prince),[8] including frequent business trips, meetings, and acquisition of government contracts. Roitz Decl., Ex. D, ¶¶ 10, 20–21; Matthews Decl., Ex. E, ¶¶ 6, 10, 15, 20. Taken together, these contacts are more than sufficient to subject each of these Defendants to general personal jurisdiction in Virginia, because it is unquestionable that each Defendant "'has adopted the state as one of its major places of business.'" *Witt*, 240 Va. at 456 (quoting *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971)).

### B.    The individual Defendant (Erik Prince) resides in Virginia.

An individual defendant resides in the place of his domicile. *King v. Wall & Beaver St. Corp.*, 145 F.2d 377, 378-79 (D.C. Cir. 1944); 14D WRIGHT, MILLER & COOPER § 3805 & n.12. In determining a person's domicile, courts consider "two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984).

---

[8]    For example, Blackwater Security is a wholly owned subsidiary of Blackwater Lodge, which is a wholly owned subsidiary of EP Investments, which has its principal place of business in McLean, Vir-ginia. Roitz Decl., Ex. D, ¶ 26; *see also* Part II.A.1, *supra*. Although establishing general jurisdiction over a parent corporation does not "automatically establish jurisdiction over a wholly owned subsidiary," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984), courts are more likely to find general jurisdiction in a state where "shareholders reside," *U.S. Gen., Inc. v. Draper City*, No. 2:05-CV-917 TS, 2006 WL 1594184, at *4 (D. Utah June 7, 2006) (relying on an eleven-factor test that includes this point).

Erik Prince resides in Virginia.  Mr. Prince's domicile is in McLean, Virginia, where he lives and intends to continue residing indefinitely.  Prince Decl., Ex. B, ¶ 1.  Plaintiffs concede this point in both complaints.  Abtan 2d Am. Cmplt. ¶ 21 (describing Mr. Prince as "a resident of McLean, Virginia"); Albazzaz Am. Cmplt. ¶ 6 (same).

## C.    The alien corporate Defendant does not affect the venue analysis.

Greystone is organized in Barbados.  Burgess Decl., Ex. F, ¶ 3.  As an alien, Greystone "may be sued in any district," 28 U.S.C. § 1391(d), including E.D. Va.  In determining proper venue in a suit with alien and non-alien defendants, the alien is ignored—"venue is proper in any district in which the suit could have been brought against the non-alien defendants alone."  14D WRIGHT, MILLER & COOPER § 3810.  Here, because all of the other Defendants reside in Virginia, venue would be proper in E.D. Va.[9]

## III.    Dismissal of all claims is appropriate.

In these cases, dismissal—not transfer to E.D. Va.—is appropriate.  Because Plaintiffs filed these cases in the wrong court, the resolution of venue is governed by 28 U.S.C. § 1406(a), which provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

*Id.*  Accordingly, this Court has the discretion either to dismiss these consolidated cases or to transfer them to a district court where venue is proper, namely E.D. Va.

---

[9]    Given that Greystone has significant business relationships with Virginia, Burgess Decl., Ex. F, ¶¶ 6–7, it is likely that it has "continuous and systematic" contacts with the State.  An inquiry into Greystone's contacts with Virginia is unnecessary, however, given the company's status as an alien.

It is appropriate for this Court to dismiss rather than transfer an action when a plaintiff has "committed an obvious error in filing [its] action in the wrong court, and thereby imposed substantial unnecessary costs on both the defendant and the judicial system." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 (4th Cir. 1993) (affirming a dismissal for lack of personal jurisdiction). In such a circumstance, it would not serve the interests of justice and judicial economy "simply to transfer [the] action to the proper court, with no cost to" Plaintiffs or Plaintiffs' counsel. *Id.*; *Coté v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986) (Posner, J.) (dismissing rather than transferring an action, even though the statute of limitations had run, because "litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction"). This general rule also is applicable to cases where a plaintiff sues in an obviously improper forum. Although general practice is to transfer a case to a forum where venue is proper, "district courts often dismiss a case, rather than transfer it under Section 1406(a), if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and * * * similar conduct should be discouraged." 14D WRIGHT, MILLER & COOPER § 3827 & n.37.

Here, the case for dismissal is strong. First, Plaintiffs have filed the *Abtan* complaint three times now (despite having been informed after the filing of the second complaint that venue is improper in the District Court for the District of Columbia), but they have still failed to offer any explanation that is even remotely plausible for venue in this Court. This is their second attempt with *Albazzaz*. Each amended complaint cites two venue provisions, and both provisions, as discussed above, are facially irrelevant. Plaintiffs have not dropped their reliance on Section 1391(a)(3), which applies to suits based only on diversity jurisdiction, in their new complaints.

11

Second, Plaintiffs' own allegations regarding the Defendants invariably refer to McLean, Virginia or Moyock, North Carolina, not Washington, D.C.  *E.g.*, Abtan 2d Am. Cmplt. ¶¶ 21–27; Albazzaz Am. Cmplt. ¶¶ 6-12.  Plaintiffs mention the District of Columbia only in a paragraph seeking discovery in order to show that Defendants "routinely conduct business and enter into contracts in this District."  Abtan 2d Am. Cmplt. ¶ 28; Albazzaz Am. Cmplt. ¶ 13.  But this generic assertion (1) alleges nothing concrete, (2) bears no relationship to the venue provisions on which Plaintiffs rely, and (3) is undercut by the fact that even when Plaintiffs allege places where Defendants are registered to do business, they include Virginia and ten other States but **not** the District of Columbia.  Abtan 2d Am. Cmplt. ¶ 19; Albazzaz Am. Cmplt ¶ 12.

Third, Plaintiffs' prior admissions and allegations demonstrate that the proper venue is E.D. Va.  Plaintiffs previously conceded that venue is proper in E.D. Va.  Abtan Pls. Opp. 5, Albazzaz Pls. Opp. 5-6.  Moreover, in the complaints, Plaintiffs allege (albeit incorrectly) that all Defendants are "owned and personally controlled" by one individual, Mr. Prince, and by two corporations, Prince Group and EP Investments.  Abtan 2d Am. Cmplt. ¶ 24; Albazzaz Am. Cmplt. ¶ 9.  All three—by Plaintiffs' own admission—reside in Virginia.  Abtan 2d Am. Cmplt. ¶¶ 21 ("Erik Prince, a resident of McLean, Virginia"), 22 ("The Prince Group LLC is * * * located at 1650 Tysons Boulevard, McLean, Virginia, 22102"), 23 ("EP Investments, LLC is located at 1650 Tysons Boulevard, McLean, Virginia, 22102"); Albazzaz Am. Cmplt. ¶¶ 6, 7, 8 (same).

Therefore, given the fact that Plaintiffs have now three times in *Abtan* made no effort whatsoever to connect their allegations to the venue requirements of federal law or the location of even one of the numerous parties they have named as Defendants, dismissal is appropriate in

both cases.  In the alternative, Defendants request that this Court transfer these cases to a court where venue is proper, namely E.D. Va.

* * * * *

WHEREFORE, Defendants respectfully request that the Court grant their Motion and enter an order dismissing in their entirety the Second Amended Complaint in *Abtan* and the Amended Complaint in *Albazzaz*; or, in the alternative, transferring both cases to the U.S. District Court for the Eastern District of Virginia.  In any event, Defendants respectfully request that this Court strike the references to Total Intelligence in the new complaints.

Respectfully submitted,

/s/ Michael Lackey
Michael Lackey  (#443362)
Andrew Pincus (#370726)
Peter White  (#468746)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

*Counsel for Defendants*

Dated: April 8, 2008

13

## CERTIFICATE OF SERVICE

I, Peter White, an attorney, certify that on April 8, 2008, I caused true and correct copies of the foregoing Motion to Dismiss, the Memorandum and its supporting documents, and the attached Proposed Order to be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who has registered for receipt of documents filed in this manner:

William T. O'Neil (426107)
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
(215) 971-5058

In addition, on this same date, I caused the above-mentioned Motion, Memorandum, supporting documents, and Proposed Order to be served upon the following counsel of record via first-class mail:

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
401 South Old Woodward Avenue
Suite 430
Birmingham, MI 48009
(248) 594-9595

Michael A. Ratner
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6439

/s/ Peter White
Peter White
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ESTATE OF HIMOUD SAED ABTAN**, *et al.* | ) | |
| | ) | Civil Case No. **1:07-cv-01831 (RBW)** |
| Plaintiffs, | ) | (Lead Case) |
| | ) | |
| v. | ) | |
| | ) | |
| **BLACKWATER LODGE AND TRAINING** | ) | |
| **CENTER**, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| **ESTATE OF ALI HUSSAMALDEEN** | ) | |
| **ALBAZZAZ**, *et al.* | ) | |
| | ) | Civil Case No. **07-cv-02273 (RBW)** |
| Plaintiffs, | ) | (Consolidated Case) |
| | ) | |
| v. | ) | |
| | ) | |
| **BLACKWATER LODGE AND TRAINING** | ) | |
| **CENTER**, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

In accordance with the Memorandum Opinion that is being issued contemporaneously with this Order, it is hereby

ORDERED that Defendants' Motion to Dismiss for Lack of Venue the Second Amended Complaint in Case No. 1:07-cv-01831 and the Amended Complaint in Case No. 07-cv-02273 is granted.

SO ORDERED on this ___ day of _____, 2008.

_____
Reggie B. Walton
United States District Court Judge

Michael Lackey  (#443362)                    William T. O'Neil (#426107)
Andrew Pincus (#370726)                      Susan L. Burke (#414939)
Peter White  (#468746)                       Elizabeth M. Burke
MAYER BROWN LLP                              Katherine R. Hawkins
1909 K Street, N.W.                           BURKE O'NEIL LLC
Washington, D.C. 20006                        1718 20th Street
(202) 263-3000                                Washington, DC 20009
                                              (202) 232-5504
*Counsel for Defendants*
                                              Michael A. Ratner
                                              Vincent Warren
                                              CENTER FOR CONSTITUTIONAL RIGHTS
                                              666 Broadway, 7th Floor
                                              New York, NY 10012
                                              (212) 614-6439

                                              Shereef Hadi Akeel
                                              AKEEL & VALENTINE, P.C.
                                              401 South Old Woodward Avenue
                                              Suite 430
                                              Birmingham, MI 48009
                                              (248) 594-9595

                                              *Counsel for Plaintiffs*

Dated:

DECLARATION OF CHRISTOPHER BURGESS

I, Christopher Burgess, subject to penalty of perjury, state the following:

1.    I am Managing Director of Greystone Limited ("Greystone"), a position I have held for three years. I have principal responsibility for directing and overseeing all operations of Greystone. My office is located in Moyock, North Carolina, and I live in Norfolk, Virginia.

2.    I am submitting this Declaration to attest to Greystone's incorporation in Barbados and to describe its contacts with the State of Virginia.

3.    Greystone was incorporated in Barbados in 2004 and complies with relevant Barbados law.

4.    Greystone's primary U.S. office is in Moyock, North Carolina.

5.    Greystone's business primarily consists of providing security services and products worldwide.

6.    Greystone derives the majority of its U.S. revenues from its role as a subcontractor on a contract with the Office of Acquisition Management ("OAM") (the principal procurement office for the Department of State), which is located at Rosslyn Station in Arlington, Virginia. Greystone's client contacts, within the United States, that are related to these contracts are primarily with persons and offices in Virginia.

7.    For the past four years, the majority of Greystone's revenues have come from its role in contracts with and overseen by OAM, as described in Paragraph 6.

8.    Greystone's contacts with Virginia are predominantly with the Eastern District of Virginia.

I have provided this Declaration for use in the *Abtan et al. v. Blackwater Worldwide et al.* and *Albazzaz et al. v. Blackwater Worldwide et al.* lawsuits, both of which I understand are pending in federal court in the District of Columbia.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  21 JAN 08        Signature: _____

Print Name:  CHRIS BURGESS

## DECLARATION OF WILLIAM MATTHEWS

I, William Matthews, subject to penalty of perjury, state the following:

1.    I am Executive Vice President of Blackwater Lodge and Training Center, Inc. ("Blackwater Lodge"), and I am a designated manager for Blackwater Armor and Targets LLC ("Blackwater Armor"); Blackwater Airships LLC ("Blackwater Airships"); Blackwater Logistics LLC ("Blackwater Logistics"); and Raven Development Group LLC ("Raven Development"). I have been a designated manager for Blackwater Armor, Blackwater Airships, and Blackwater Logistics for two years; and for Raven Development for three years. My office is located in Moyock, North Carolina, and I live in Chesapeake, Virginia.

2.    I am submitting this Declaration to describe the contacts that Blackwater Armor, Blackwater Airships, Blackwater Logistics, and Raven Development have with the State of Virginia.

### BLACKWATER ARMOR

3.    Blackwater Armor is a Delaware Limited Liability Corporation (EIN 83-0440520) and was incorporated on October 16, 2005.

4.    Blackwater Armor's business primarily consists of sales of firearms-range target systems and armored vehicles.

5.    Blackwater Armor maintains an office at 1650 Tysons Blvd., McLean, Virginia 22102 ("the McLean Site"). Blackwater Armor has maintained an office in Virginia since its incorporation.

6.    Personnel at Blackwater Armor's headquarters, in Moyock, North Carolina, are in regular contact by phone, fax, email, and mail with the McLean Site. Officers from Blackwater Armor's headquarters in Moyock, North Carolina routinely conduct business in Virginia with clients and strategic partners.

7.    Blackwater Armor's contacts with Virginia are predominantly with the Eastern District of Virginia.

BLACKWATER AIRSHIPS

8.      Blackwater Airships is a Delaware Limited Liability Corporation (EIN 52-2009526) and was incorporated on January 6, 2006.

9.      Blackwater Airships' business primarily consists of design and development of remotely piloted airships.

10.     Personnel at Blackwater Airships' facilities in Moyock, North Carolina, are in regular contact by phone, fax, email, and mail with the McLean Site. Officers from Blackwater Airships' headquarters in Moyock, North Carolina routinely conduct business in Virginia with clients and strategic partners.

11.     Blackwater Airships' contacts with Virginia are predominantly with the Eastern District of Virginia.

BLACKWATER LOGISTICS

12.     Blackwater Logistics is a Delaware Limited Liability Corporation (EIN 20-4940466) and was incorporated on May 16, 2006.

13.     Blackwater Logistics' business primarily consists of freight forwarding.

14.     Blackwater Logistics conducts business in Virginia, and the state is one of Blackwater Logistics' major places of business, as a significant amount of the cargo shipments conducted by Blackwater Logistics involve ports and terminals in the Eastern District of Virginia.

15.     Personnel at Blackwater Logistics' headquarters, in Moyock, North Carolina, are in regular contact by phone, fax, email, and mail with the McLean Site. Officers from Blackwater Logistics' headquarters in Moyock, North Carolina routinely conduct business in Virginia with clients and strategic partners.

16.     Blackwater Logistics' contacts with Virginia are predominantly with the Eastern District of Virginia.

RAVEN DEVELOPMENT

17.     Raven Development is a Delaware Limited Liability Corporation (EIN 52-2398747) and was incorporated on September 3, 2004. Raven Development is authorized to do business in Virginia.

18.   Raven Development's business primarily consists of industrial, commercial, and residential construction.

19.   Raven Development conducts business in Virginia, and the state is one of Raven Development's major places of business.

20.   Personnel at Raven Development's headquarters, in Moyock, North Carolina, are in regular contact by phone, fax, email, and mail with the McLean Site. Officers from Raven Development's headquarters in Moyock, North Carolina routinely conduct business in Virginia with clients and strategic partners.

21.   Raven Development engages in contract acquisition activities in Virginia, including development of a $10M auto auction facility.

22.   Raven Development's ownership is based in Virginia. Raven Development is a wholly owned subsidiary of EP Investments LLC, which has its principal place of business at the McLean Site.

23.   Raven Development's contacts with Virginia are predominantly with the Eastern District of Virginia.

I have provided this Declaration for use in the *Abtan et al. v. Blackwater Worldwide et al.* and *Albazzaz et al. v. Blackwater Worldwide et al.* lawsuits, both of which I understand are pending in federal court in the District of Columbia.

I declare under penalty of perjury that the foregoing are true and correct.

Executed on: __1/22/08__     Signature: _____

Print Name: __WILLIAM MATHEWS__

3

## DECLARATION OF ERIK PRINCE

I, Erik Prince, subject to penalty of perjury, state the following:

1.    I reside in McLean, Virginia. I live in Virginia year-round, own property here, am registered to vote here, and have a Virginia drivers' license. I currently intend to continue living in Virginia indefinitely.

2.    Since 1998 I have been President of EP Investments LLC ("EP Invest-ments").

3.    I am submitting this Declaration to describe the contacts that EP Invest-ments has with the State of Virginia.

4.    EP Investments is a Delaware Limited Liability Corporation (EIN 51-0387381) and was incorporated on May 19, 1998.

5.    EP Investments' principal place of business is its office at 1650 Tysons Blvd., McLean, Virginia 22102 ("the McLean Site"). EP Investments' principal place of business has been in McLean, Virginia, since August 2000.

6.    EP Investments' contacts with Virginia are predominantly with the East-ern District of Virginia. I reside in the Eastern District of Virginia.

I have provided this Declaration for use in the *Abtan et al. v. Blackwater World-wide et al.* and *Albazzaz et al. v. Blackwater Worldwide et al.* lawsuits, both of which I understand are pending in federal court in the District of Columbia.

I declare under penalty of perjury that the foregoing are true and correct.

Executed on:  22 Jan'08    Signature: _____

Print Name: _Erik Prince_

DECLARATION OF FRED ROITZ

I, Fred Roitz, subject to penalty of perjury, state the following:

1.    I am Secretary and Vice President for contracts and compliance of Black-water Lodge and Training Center, Inc. ("Blackwater Lodge"), and I have held these positions for three years.  I have principal responsibility for government contracting.

2.    Blackwater Lodge is the manager of Blackwater Security Consulting LLC ("Blackwater Security"), which is its wholly owned subsidiary.

3.    My office is located at Moyock, North Carolina, and I live in Yorktown, Virginia.

4.    I am submitting this Declaration to describe the contacts that Blackwater Lodge and Blackwater Security have with the State of Virginia.

BLACKWATER LODGE

5.    Blackwater Lodge is a Delaware S Corporation (EIN 52-2009526) and was incorporated on December 26, 1996.

6.    Blackwater Lodge's business primarily consists of training and government contracting.  Blackwater Lodge manages Blackwater Security.

7.    Blackwater Lodge is licensed to do business in Virginia, has appointed an agent for service of process within the State, and pays Virginia corporate and franchise income taxes.

8.    Blackwater Lodge conducts business in Virginia, and the State is one of its major places of business.

9.    Blackwater Lodge maintains a Virginia office.  This office is located at 1650 Tysons Blvd., McLean, Virginia 22102 ("the McLean Site").  The McLean Site is a 10,000 square-foot facility leased by Blackwater Lodge. Blackwater Lodge has maintained an office in Virginia since shortly after inception of the company.

10.    Personnel at Blackwater Lodge's headquarters, in Moyock, North Caro-lina, are in regular contact by phone, fax, email, and mail with the McLean

Site. Blackwater Lodge officers routinely conduct business in Virginia with clients and strategic partners.

11.     Blackwater Lodge engages in contract acquisition activities in Virginia, including numerous government contracts.

12.     Blackwater Lodge derives significant revenue from contracts with government acquisition offices in Virginia. At present, these include contracts, worth over $300 million annually, issued by the Office of Acquisition Management ("OAM"), which is the principal procurement office for the Department of State and is located at Rosslyn Station in Arlington, Virginia. These contracts were signed by government acquisition officials who work in Virginia and were signed at government offices in Virginia. Further, Blackwater Lodge's client contacts, within the United States, that are related to these contracts are primarily with persons and offices in Virginia.

13.     The contracts described in Paragraph 12 represent the majority of Blackwater Lodge's revenues. For the past three years, the majority of Blackwater Lodge's revenues have come from contracts with and overseen by the government acquisition office named in Paragraph 12.

14.     Blackwater Lodge's ownership is based in Virginia. Blackwater Lodge is a wholly owned subsidiary of EP Investments LLC, which has its principal place of business at the McLean Site.

15.     Blackwater Lodge's contacts with Virginia are predominantly with the Eastern District of Virginia.

16.     "Blackwater Worldwide" and "Blackwater USA" are doing-business-as ("d/b/a") names only. Blackwater Lodge is among the corporate entities that use "Blackwater Worldwide" and Blackwater Lodge has registered "Blackwater USA" as its fictitious business name.

17.     Blackwater Canine is a division of Blackwater Lodge. It is not registered as a corporation and has no independent legal existence. Blackwater Canine and the other divisions of Blackwater Lodge share corporate assets (e.g., Human Resources Department, Information Technology Department, Accounting, Logistics) and report to the same executive officers.

BLACKWATER SECURITY

18.    Blackwater Security is a Delaware Limited Liability Corporation (EIN 45-0473998) and was incorporated on January 22, 2002.

19.    Blackwater Security's business primarily consists of providing individually retained private security providers who support United States government contracts overseas.

20.    Blackwater Security is licensed to do business in Virginia, has appointed an agent for service of process within the state, and pays Virginia corporate and franchise income taxes.

21.    Blackwater Security conducts business in Virginia, and the state is one of its major places of business.

22.    Blackwater Security maintains an office at the McLean Site.    (The McLean Site is leased by its parent corporation, Blackwater Lodge.) Blackwater Security has maintained an office in Virginia since 2002.

23.    Blackwater Security engages in contract acquisition activities in Virginia, including numerous classified contracts.

24.    Blackwater Security derives significant revenue from contracts with government acquisition offices in Virginia, particularly from its classified contracts of significant annual value.  These contracts were signed by government acquisition officials who work in Virginia and were signed at government offices in Virginia.  Further, Blackwater Security's client contacts, within the United States, that are related to these contracts are primarily with persons and offices in Virginia.

25.    The contracts listed in Paragraph 24 represent a significant portion of Blackwater Security's revenues.  For the past three years, the majority of Blackwater Security's revenues have come from contracts with and overseen by the government acquisition offices mentioned in Paragraph 24, as well as subcontracts the prime for which is the government acquisition office named in Paragraph 12.

26.    Blackwater Security's ownership is based in Virginia.  Blackwater Security is a wholly owned subsidiary of Blackwater Lodge, which is in turn a wholly owned subsidiary of EP Investments LLC, which has its principal place of business at the McLean Site.

27.    Blackwater Security's contacts with Virginia are predominantly with the Eastern District of Virginia.

I have provided this Declaration for use in the *Abtan et al. v. Blackwater Worldwide et al.* and *Albazzaz et al. v. Blackwater Worldwide et al.* lawsuits, both of which I understand are pending in federal court in the District of Columbia.

I declare under penalty of perjury that the foregoing are true and correct.

Executed on:    1/22/08        Signature: _____

                              Print Name:    FRED ROITZ

DECLARATION OF JOSEPH E. SCHMITZ

I, Joseph E. Schmitz, subject to penalty of perjury, state the following:

1.      I am Chief Operating Officer and General Counsel of Prince Group LLC ("Prince Group"). I have held these positions since September 2005.

2.      I am submitting this Declaration to describe the contacts that Prince Group has with the Commonwealth of Virginia.

3.      Prince Group is a Michigan Limited Liability Corporation (EIN 38-3382187), and was incorporated on November 26, 1997.

4.      Prince Group's principal place of business is at 1650 Tysons Blvd., McLean, Virginia 22102 ("the McLean Site"). Prince Group's principal place of business has been located in McLean, Virginia, since August 2000.

5.      All of Prince Group's employees work at the McLean Site, and none reside in the District of Columbia.

6.      Prince Group conducts business with numerous entities located in Virginia.

7.      Prince Group's contacts with Virginia are predominantly with the Eastern District of Virginia.

I have provided this Declaration for use in the *Abtan et al. v. Blackwater Worldwide et al.* and *Albazzaz et al. v. Blackwater Worldwide et al.* lawsuits, both of which I understand are pending in federal court in the District of Columbia.

I declare under penalty of perjury that the foregoing are true and correct.

Executed on: 22 January '08      Signature: _____

Print Name: Joseph E. Schmitz