**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ESTATE OF HIMOUD SAED ABTAN**, *et al.* | ) | |
| | ) | Civil Case No. **1:07-cv-01831 (RBW)** |
| Plaintiffs, | ) | (Lead Case) |
| | ) | |
| v. | ) | |
| | ) | |
| **BLACKWATER LODGE AND TRAINING** | ) | |
| **CENTER**, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| **ESTATE OF ALI HUSSAMALDEEN** | ) | |
| **ALBAZZAZ**, *et al.* | ) | |
| | ) | Civil Case No. **07-CV-02273 (RBW)** |
| Plaintiffs, | ) | (Consolidated Case) |
| | ) | |
| v. | ) | |
| | ) | |
| **BLACKWATER LODGE AND TRAINING** | ) | |
| **CENTER**, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF VENUE THE SECOND AMENDED COMPLAINT IN CASE NO. 1:07-CV-01831 AND THE AMENDED COMPLAINT IN CASE NO. 07-CV-02273

Michael Lackey  (#443362)
Andrew Pincus (#370726)
Peter White  (#468746)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000
*Counsel for Defendants*

Dated: April 29, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .................................................................................................................... 1

I.    Plaintiffs Have Failed To Establish Any Basis For Venue In This Court ........................ 3

    A.    Plaintiffs do not attempt to justify venue under Section 1391(a)(3), which
        applies only to lawsuits based solely on diversity jurisdiction ............................ 3

    B.    Plaintiffs' second basis for venue, Section 1391(b)(2), is inapplicable be-
        cause no substantial part of the events or omissions giving rising to Plain-
        tiffs' claims occurred in the District of Columbia ................................................ 3

        1.    Plaintiffs' theory of venue is inconsistent with well-established law
            on Section 1391(b)(2) .............................................................................. 4

        2.    Plaintiffs' cases do not support their theory of venue.............................. 7

        3.    Plaintiffs do not assert any legitimate factual predicate for their in-
            valid theory of venue ............................................................................. 10

    C.    Plaintiffs' hypothetical about venue with different defendants and different
        pleadings is not properly before the Court........................................................ 11

II.   Venue-Related Discovery Is Unnecessary.................................................................... 13

III.  Dismissal of All Claims Is Appropriate........................................................................ 14

i

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1 (D.D.C. 2003)......................................6

*\*Adrian v. United States*, No. Civ. A. 04-1721, 2006 WL 763076
    (D.D.C. Mar. 13, 2006)................................................................................5, 10

*Arbitraje Casa de Cambio, S.A. de C.V. v. United States Postal Serv.*,
    297 F. Supp. 2d 165 (D.D.C. 2003)...................................................................12

*Belizan v. Hershon*, 434 F.3d 579 (D.C. Cir. 2006) ........................................................12

*Bell v. Classic Auto Group, Inc.*, No. 04 Civ. 0693, 2005 WL 659196
    (S.D.N.Y. Mar. 21, 2005) ...........................................................................13

*Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993) .................................................10

*DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14 (D.D.C. 2002) ..................................12, 13

*\*Dier v. Madachy*, Civ. A. No. 07-106, 2007 WL 707538
    (D.D.C. Feb. 21, 2007) ..............................................................................6

*FC Investment Group LC v. Lichtenstein*, 441 F. Supp. 2d 3 (D.D.C. 2006)................................9

*Ferraioli v. Cantor*, 259 F. Supp. 842 (S.D.N.Y. 1966)....................................................13

*Freeman v. Fallin*, 254 F. Supp. 2d 52 (D.D.C. 2003) .....................................................3

*Great Socialist People's Libyan Arab Jamahiriya v. Miski*,
    496 F. Supp. 2d 137 (D.D.C. 2007)...................................................................8

*Lamont v. Haig*, 590 F.2d 1124 (D.C. Cir. 1978)..........................................................8

*Lescs v. Martinsburg Police Dep't*, No. Civ. A. 00-2404, 2002 WL 215511
    (D.D.C. Jan. 28, 2002)...............................................................................11

*Mathis v. Geo Group, Inc.*, 535 F. Supp. 2d 83 (D.D.C. 2008)............................................8

*Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005)........................................................14

*Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1 (D.D.C. 2003) ....................................12

*Rogers v. Metro. & City Police New Scotland Yard of London*,
    Civ. A. No. 91-2124, 1992 WL 23669 (D.D.C. Jan. 23, 1992)...........................................4

*S.L. Sakansky & Assocs., Inc. v. Allied Am. Adjusting Co.*,
No. 3:05-cv-708-J-32, 2006 WL 948055 (M.D. Fla. Apr. 12, 2006) ...............................13

*Sharp Electronics Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228 (D.C. Cir. 1981) .........7, 8

*State Farm Mut. Auto. Ins. Co. v. Bussell*, 939 F. Supp. 646 (S.D. Ind. 1996) ...........................5

*United States v. Toushin*, 714 F. Supp. 1452 (M.D. Tenn. 1989)...................................................14

**STATUTES:**

28 U.S.C. § 1391(a)(3)..................................................................................................2, 3, 14

28 U.S.C. § 1391(b)(1) .................................................................................................1, 11, 12

28 U.S.C. § 1391(b)(2) .....................................................................................................*passim*

28 U.S.C. § 1391(c) ...............................................................................................................13

28 U.S.C. § 1404(a) .....................................................................................................8, 14, 15

28 U.S.C. § 1406(a) ...........................................................................................................*passim*

Fed. R. Civ. P. 12(b)(3)..............................................................................................................1, 2

**MISCELLANEOUS:**

14D Wright, Miller & Cooper, Federal Practice & Procedure § 3806.1 (2007).........................5, 8

# ARGUMENT

As in their previous opposition,[1] Plaintiffs rely on invective and hyperbole instead of legal argumentation on the venue provisions that they have invoked.  Plaintiffs persist in arguing that venue is proper in the District of Columbia essentially because Defendants[2] have federal government contracts, ignoring the well-established authority cited by Defendants now for the third time[3] that such a tenuous and impossibly expansive venue theory must fail as a matter of law in *a tort suit where the allegedly tortious actions and injuries occurred in Iraq*.  Moreover, although Plaintiffs again concede that venue would be proper in the Eastern District of Virginia,[4] both Complaints[5] should be dismissed rather than transferred pursuant to Fed. R. Civ. P. 12(b)(3) and

---

[1]    Dkt. No. 14 ("Pls. Previous Opp'n").

[2]    Blackwater Lodge and Training Center, Inc. ("Blackwater Lodge"); Blackwater Security Consulting LLC ("Blackwater Security"); Blackwater Armor and Targets LLC ("Blackwater Armor"); Blackwater Airships LLC ("Blackwater Airships"); Blackwater Logistics LLC ("Blackwater Logistics"); Raven Development Group LLC ("Raven Development"); Greystone Limited ("Greystone"); Prince Group LLC ("Prince Group"); EP Investments LLC ("EP Investments"); and Erik Prince (collectively, "Defendants").

[3]    Defendants cited this line of authority in their reply brief to the previous motion to dismiss for lack of venue and in their opening brief in support of the pending motion to dismiss for lack of venue.  *See* Defendants' Previous Reply Brief, Dkt. No. 15, at 4-5 ("Defs. Previous Reply Br."); Defendants Opening Brief, Dkt. No. 20, at 4-5 ("Defs. Br.").  This Court denied Defendants' previous motion without prejudice.  *See* Minute Order, Mar. 28, 2008.

[4]    Plaintiffs concede that venue would be proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(1).  Dkt. No. 22 ("Pls. Opp'n") at 6.

[5]    These are the Second Amended Complaint in *Estate of Himoud Saed Abtan v. Blackwater Lodge and Training Center, Inc.*, No. 1:07-cv-01831, Dkt. No. 18 ("Abtan 2d Am. Compl."), and the Amended Complaint in *Estate of Ali Hussamaldeen Albazzaz v. Blackwater Lodge and Training Center*, No. 07-cv-02273 ("Albazzaz Am. Compl.") (collectively, "Complaints").  Defendants note that Plaintiffs, in the middle of this second round of venue briefing, have filed a proposed Third Amended Complaint in *Abtan*, and the proposed complaint relies on the same two venue provisions as its predecessors.  Because the opening brief and the opposition both addressed the Second Amended Complaint in *Abtan* and the Amended Complaint in *Albazzaz*, this reply brief will do the same.  Defendants also note that Plaintiffs have still not actually filed the Amended Complaint in *Albazzaz* that has been the subject now of briefing by both parties.  *See* Defs. Br. 1 n.2.

28 U.S.C. § 1406(a) because Plaintiffs have now repeatedly committed an obvious error by rely-ing on inapplicable venue provisions and failing to allege any basis whatsoever to satisfy their burden of establishing that venue is proper in this Court.[6]

In their latest opposition brief,[7] Plaintiffs abandon one of the two venue provisions cited in all their complaints (the original complaints; the First, Second, and Proposed Third Amended Complaints in *Abtan* and the Proposed Amended Complaint in *Albazzaz*), 28 U.S.C. § 1391(a)(3). This provision applies only when a lawsuit is based solely on diversity jurisdic-tion, and therefore has always been inapposite here. The provision on which Plaintiffs now rely entirely is 28 U.S.C. § 1391(b)(2), which supports venue only in a district where "a substantial part of the events or omissions giving rise to the claim occurred." Here, Plaintiffs' claims rest on their allegations about events in "a traffic circle known as Nisoor Square" in Baghdad, Iraq, on September 16, 2007, Abtan 2d Am. Compl. ¶¶ 32, 33; and events "in and around Al Watahba Square" in the same city on September 9, 2007, Albazzaz Am. Compl. ¶ 17. Section 1391(b)(2)'s "substantial part" requirement would be drained of any meaning if it permitted venue in the District of Columbia with respect to tort claims based on acts alleged to have oc-curred in Iraq that are asserted by Iraqi citizens.

Because Plaintiffs have established no grounds for venue in this Court, the Complaints should be dismissed pursuant to 28 U.S.C. § 1406(a) and Fed. R. Civ. P. 12(b)(3); or, in the al-

---

[6]    Plaintiffs suggest that Defendants seek dismissal or transfer to obtain the benefit of Virginia's statu-tory cap on punitive damages. Pls. Opp'n 1, 6. The extent to which District of Columbia or Virginia choice-of-law rules would apply local law to Plaintiffs' tort claims is far from clear. In any event, venue and choice of law are independent legal inquiries. Only the former is at issue here. And Plaintiffs' offer to concede venue in exchange for a waiver of the Virginia punitive damages cap (*id*. at 1 n.1) makes clear that Plaintiffs are more interested in forum-shopping for substantive law than in ensuring that this matter is heard in the District of Columbia.

[7]    Pls. Opp'n.

ternative, this action should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a).

## I.      Plaintiffs Have Failed To Establish Any Basis For Venue In This Court.

Plaintiffs have the "obligation to institute the action in a permissible forum." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). They accordingly bear the "burden of establishing that venue is proper." *Id.*; Defs. Br. 2.

### A.      Plaintiffs do not attempt to justify venue under Section 1391(a)(3), which applies only to lawsuits based solely on diversity jurisdiction.

Plaintiffs have abandoned reliance on 28 U.S.C. § 1391(a)(3), the first basis for venue set forth in the Complaints. Abtan 2d Am. Compl. ¶ 30; Albazzaz Am. Compl. ¶ 15. That provision applies only to a suit—unlike this one—that is based solely on diversity jurisdiction. Defs. Br. 2-3. Plaintiffs do not address this provision in their opposition or respond to Defendants' argument that it is inapplicable in this case. They accordingly have abandoned and therefore waived reliance on Section 1391(a)(3).

### B.      Plaintiffs' second basis for venue, Section 1391(b)(2), is inapplicable because no substantial part of the events or omissions giving rising to Plaintiffs' claims occurred in the District of Columbia.

In their Opposition, Plaintiffs rely solely on the second venue provision cited in the Complaints, but it, too, provides no basis for venue in this Court. Section 1391(b)(2) authorizes venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Section 1391(b)(2) is incapable of supporting venue in this Court for *Abtan* and *Albazzaz* because the "events or omissions giving rise" to Plaintiffs' claims are allegedly tortious actions in

Nisoor Square and Al Watahba Square in Iraq.  Abtan 2d Am. Compl. ¶¶ 32, 33; Albazzaz Am.

Compl. ¶ 17.  The events of September 9 and 16, 2007 in Baghdad are the "events or omissions

giving rise to" Plaintiffs' claims, and ***none*** of these events, much less "a substantial part" of

them, occurred in the District of Columbia.  *See* Abtan 2d Am. Compl. ¶¶ 85-111 (asserting

causes of action for war crimes (count 1), assault and battery (count 2), wrongful death (count 3),

intentional infliction of emotional distress (count 4), negligent infliction of emotional distress

(count 5), and negligent hiring, training, and supervision (count 6)); Albazzaz Am. Compl. ¶¶

62-88 (same).[8]  *See also Rogers v. Metro. & City Police New Scotland Yard of London*, Civ. A.

No. 91-2124, 1992 WL 23669, at *1 (D.D.C. Jan. 23, 1992) (finding venue improper in this

Court under Section 1391(b)(2) because the "complaint describe[d] no important events giving

rise to [plaintiff's] claim which took place in the District of Columbia or property alleged to be

located in the District" but rather "describe[d] events occurring mostly in Colorado, California,

or overseas").

       1.    *Plaintiffs' theory of venue is inconsistent with well-established law on*
              *Section 1391(b)(2).*

Plaintiffs devote most of their argument to emphasizing that they need not show that ***most***

of the events giving rise to their claims occurred in the District of Columbia.  Pls. Opp'n 7-9.

Defendants have never suggested otherwise; indeed, Defendants noted in previous briefing that

Plaintiffs do ***not*** have to show that most of the events giving rise to their claims occurred in this

District.  Defs. Previous Reply Br. 4.  The relevant question is whether Plaintiffs have met their

---

[8]    The only count for which some of the allegedly tortious acts could conceivably have occurred outside
of Iraq is count 6 (negligent hiring, training, and supervision).  Even in their opposition brief, Plaintiffs
make no allegation whatsoever that ***any*** of the alleged negligent hiring, training, and supervision occurred
in the District of Columbia.

burden of showing that "*a substantial part* of the events or omissions giving rise to the claim[s] occurred" in the District of Columbia.  28 U.S.C. § 1391(b)(2) (emphasis added).[9]

To meet that burden, Plaintiffs propose an unbelievably expansive construction of Section 1391(b)(2).  *See* Pls. Opp'n 8-9.  They contend that because Defendants are federal contractors and the District of Columbia is "the seat of the federal government," *id.* at 5, venue is appropriate here for any tort in any way related to work performed under a federal contract.  Their "but for" argument, *see id.*,  is wrong as a matter of law for three separate reasons.

First, notwithstanding Plaintiffs' effort to divert attention to the federal contracts, the claims in this action sound exclusively in tort.  As noted in Defendants' opening brief, Defs. Br. 4—and entirely ignored by Plaintiffs—it is black letter law that, in a tort suit, the "substantial part" venue inquiry focuses on *"where the allegedly tortious actions occurred and the place where the harms were felt."*  14D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 3806.1 at 213-215 (2007) (emphasis added); *see Adrian v. United States*, No. Civ. A. 04-1721, 2006 WL 763076, at *2 (D.D.C. Mar. 13, 2006) (unpublished) (Walton, J.) (finding no venue under Section 1391(b)(2) for a *Bivens* claim when "all of the allegedly injurious acts occurred in" another state); *see also State Farm Mut. Auto. Ins. Co. v. Bussell*, 939 F. Supp. 646, 650 (S.D. Ind. 1996) (Barker, C.J.) (distinguishing contract and tort suits on this basis under the identical language of Section 1391(a)(2)).  Only in contract actions does the inquiry focus on "where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred."  14D WRIGHT, MILLER & COOPER § 3806.1 at 207-212.

---

[9]    Plaintiffs also argue that they were not obliged to plead facts supporting venue in their complaint. Pls. Opp'n 6-7.  That is true, but as Defendants already noted in previous briefing, Defs. Previous Reply Br. 4 n.4, now that Defendants have raised the improper venue defense, Plaintiffs must carry their burden of establishing that venue is proper.

Second, this Court has rejected the simplistic "but for" logic underlying Plaintiffs' theory of venue. In *Dier v. Madachy*, Civ. A. No. 07-106, 2007 WL 707538, at *4 (D.D.C. Feb. 21, 2007) (denying request for reconsideration), a habeas petitioner argued that "a substantial part" of the events giving rise to her claim occurred in the District of Columbia because testimony from a physician who cared for her during hospitalization in the District was a "but for" cause of the later, allegedly actionable events (a guardianship proceeding in Maryland). The court expressly rejected this argument "because the instant Petition does not challenge the events that occurred in the District of Columbia." *Id.*; *see also Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 4-5 (D.D.C. 2003) (rejecting a "but for" venue argument regarding a contract negotiated in the District of Columbia under the identical language of Section 1391(a)(2)).

Third, Plaintiffs' proposed rule would produce dramatic changes in venue standards. Under Plaintiffs' theory, any tort claim in any way related to actions by a federal contractor could be brought in the District of Columbia on the theory that "but for" the federal contract, the alleged tort would not have occurred. For example, any inmate in the country who sued a private prison under contract with the federal Bureau of Prisons could bring his claim—no matter what its basis—in the District of Columbia. But Plaintiffs' theory is not limited to federal contractors. Any case involving a tort committed by any sort of contractor or its employees—or a subcontractor or its employees—could be heard in the district in which the initial contract was entered into, even if the contractor, the work, the alleged tort, and the subcontract or subcontractor had no relation whatsoever to that district. As in this case, a plaintiff could argue that the initial contract was a "but for" cause of the alleged tort. A plaintiff injured in an automobile accident, moreover, could argue that venue lay in the district where the defendant purchased the car because "but for" that purchase the accident would not have occurred.

* * * * *

These three flaws in Plaintiffs' venue theory all spring from Plaintiffs' unwillingness to consider a simple question: to make venue proper in this District, it must be the location for a substantial part of *what*?  According to Section 1391(b)(2), the answer is "a substantial part of the events or omissions giving rise to the claim."  And for claims sounding in tort, those events or omissions are the alleged tortious acts and the alleged injuries.  But Plaintiffs elide this point, and argue as if the answer is that this District has to be the location of only a substantial part of whatever extraneous matter Plaintiffs choose to allege, regardless of whether those allegations are relevant to, let alone "giv[e] rise to," the causes of actions at issue.  Plaintiffs cannot evade the text of Section 1391(b)(2) and the well-settled law interpreting it by larding their case with allegations that are connected to the District of Columbia but have nothing to do with the causes of action actually at issue.

### 2.    *Plaintiffs' cases do not support their theory of venue.*

To support their position that this Court should reject such well-settled authority—and hold instead that a substantial part of the events giving rise to a claim can occur in any district in which "essential links * * * culminating" in those events took place—Plaintiffs rely on three cases.  Pls. Opp'n 8-9.  Each is inapposite.

The first case, *Sharp Electronics Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228 (D.C. Cir. 1981) (per curiam), is distinguishable for several reasons.  To begin with, *Sharp* interpreted a prior version of Section 1391(b)(2), which was revised in 1990 to address the specific issue that concerned the court in that case—the risk that venue might not be proper in any forum because of the earlier statute's more restrictive language.  *Sharp*, 655 F.2d at 1230 (urging the district court to transfer the suit to a more suitable forum, but if that was not possible, to reconsider

7

dismissal in order to "'ensur[e] the existence of at least one forum wherein venue and personal jurisdiction requirements permit multiple-party litigation to proceed'") (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 n.62 (D.C. Cir. 1978)). Here, there is no need to ensure at least one forum where venue is proper because Plaintiffs expressly concede that venue is proper in Virginia. Pls. Opp'n 6. Moreover, it is unclear whether the language of *Sharp* on which Plaintiffs rely even remains good law after the 1990 revision of Section 1391(b)(2).[10]

Plaintiffs' second case is distinguishable because the allegedly wrongful act—operating websites whose domain names appropriated the Libyan government's "famous marks"—occurred in part in the District of Columbia and its injurious effects were felt here as well. *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 496 F. Supp. 2d 137, 144 (D.D.C. 2007) (Walton, J.).[11] Venue was appropriate in the District of Columbia, this Court held, because "the website [was] apparently utilized and maintained by a business organization that is both head-quartered and primarily operates in the District of Columbia," the defendant was the executive director and registered agent of that organization, and the defendant had a key meeting with a Libyan government official about use of the relevant domain name in the District of Columbia.

---

[10]   Plaintiffs defend their use of *Sharp*, Pls. Opp'n 7 n.4, but the defenses are inapposite. The unusual language in *Sharp* on which Plaintiffs rely, *see* Pls. Opp'n 8, is inconsistent with the 1990 amendments to Section 1391. *See* 14D WRIGHT, MILLER & COOPER § 3806 at 187-199 (describing amendment to Section 1391(b)(2)). Further, the cases Plaintiffs cite as relying on *Sharp*, on inspection, prove to have nothing to do with Plaintiffs' theory of venue. For example, Plaintiffs look to *Mathis v. Geo Group, Inc.*, 535 F. Supp. 2d 83, 86 (D.D.C. 2008) as a case "citing *Sharp* as authority in deciding a motion for § 1391 venue transfer." Pls. Opp'n 7 n.4. But *Mathis* cites *Sharp* for the mundane proposition that before transferring an action the court must ensure that venue and personal jurisdiction are proper. 535 F. Supp. 2d at 86. In fact, *Mathis* is squarely opposed to Plaintiffs' theory because it **rejected** an argument that a North Carolina private prison's contract with and oversight by the federal Bureau of Prisons established venue in the District of Columbia for claims brought by inmates against the prison. *Id.* at 88-89.

[11]   As noted in Defendants' earlier briefing (Defs. Previous Reply Br. 7 n.6), the page Plaintiffs cite from *Great Socialist People's Libyan Arab Jamahiriya* refers only to the balancing of conveniences for transfer under 28 U.S.C. § 1404(a). Pls. Opp'n 6, 8. Presumably Plaintiffs are relying on the court's discussion of Section 1391(b)(2) elsewhere in the case.

*Id.* at 143.  In the present cases, by contrast, neither the wrongful conduct nor the injuries alleged by Plaintiffs occurred in the District of Columbia.

Finally, Plaintiffs cite *FC Investment Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 11 (D.D.C. 2006), to support their overly broad "but for" proposition that venue is proper in the District of Columbia simply because as government contractors, Defendants must have had some general communications with government officials in the District that were "essential links in a chain of events culminating" in the alleged tortious conduct.  Pls. Opp'n 9.  *FC Investment*, however, concerned a fraud action in which the communications that occurred in the District of Columbia ***were part of the fraud*** and thus were at the core of the alleged tortious conduct giving rise to plaintiffs' claims.  441 F. Supp. 2d at 12 (Defendant "is alleged to have played a major role by inducing Plaintiffs' reliance, reassuring Plaintiffs that they would receive refunds for their investments, and sending Plaintiffs account statements and false information, all directed to [Plaintiffs'] District of Columbia office.").  Here, Plaintiffs do not explain how any of the alleged tortious conduct giving rise to their claims occurred in the District of Columbia, and the generic communications alleged by Plaintiffs have nothing to do with the allegedly tortious conduct—the unjustified killing of civilians in Baghdad, Iraq.[12]

---

[12]    The heading on page three of Plaintiffs' brief suggests that the Complaints allege that "Prince and Blackwater Made Misrepresentations in this District To Procure Business from the Department of State." Pls. Opp'n 3.  But the Complaints nowhere allege that any supposed misrepresentations happened "in this District" and Plaintiffs do not submit an affidavit or any other cognizable evidence supporting the allegation in their brief.  Moreover, Plaintiffs bring no causes of actions based on misrepresentations to the government and would have no standing to do so.

      3.     *Plaintiffs do not assert any legitimate factual predicate for their invalid theory of venue.*

      Even if Plaintiffs' legal theory were valid, which it is not, they do not assert any legitimate factual predicate for its application.  For example, Plaintiffs suggest that "[t]he relevant Department of State office is located in Washington, D.C. at 2201 C Street, N.W., Washington, D.C." because the Assistant Secretary for the Bureau of Diplomatic Security is located at the C Street address.  Pls. Opp'n 2 (citing Decl. of William T. O'Neil, ¶ 3, attaching United States Department of State Telephone Directory as Exhibit 1).  But the very same page of the State Department directory Plaintiffs cite shows that the Principal Deputy Assistant Secretary for Diplomatic Security, who is also the Director of the Diplomatic Security Service and thus the responsible official for the contracts on which Plaintiffs place so much emphasis, is located in Virginia.  *See* O'Neil Decl., Ex. 1, p. OD-17; *see also* Decl. of Gary Jackson (attaching "Amendment of Solicitation/Modification of Contract" signed by a contracting officer at the Office of Acquisition Management, PO Box 9115, Rosslyn Station, US Department of State, Arlington, Virginia, 22219).

      Plaintiffs also cite allegations about congressional and criminal inquiries in the District of Columbia, but those allegations are irrelevant to the venue analysis.  As a general matter, this Court must "carefully * * * guard against the danger that a plaintiff might manufacture venue in the District of Columbia."  *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).  More specifically, it is clear that Plaintiffs may not rely on oversight by government agencies to show that "a substantial part" of the events giving rise to their claim occurred here.  *See Adrian*, 2006 WL 763076, at *2 (rejecting argument that "a substantial part" of the events giving rise to a *Bivens* claim occurred in the District of Columbia even though plaintiffs alleged that the agent's actions "were sanctioned, approved, or ratified by FBI headquarters in Washington, D.C.") (in-

ternal quotation marks omitted); *see also Lescs v. Martinsburg Police Dep't*, No. Civ. A. 00-2404, 2002 WL 215511, at *2 (D.D.C. Jan. 28, 2002) (unpublished) (finding no venue under Section 1391(b)(2), even though many of the defendants were government officials residing in the District of Columbia, because plaintiffs did "not specifically allege that *any* Federal Defendant who resides in the District of Columbia unlawfully investigated them, unlawfully released their medical records, or unlawfully defamed them").  And government investigations and other activities in the District of Columbia that occurred *after* the allegedly tortious actions in Iraq could not possibly "giv[e] rise to" Plaintiffs' claims.  28 U.S.C. § 1391(b)(2).

* * * * *

In sum, Plaintiffs have brought claims arising out of alleged torts in Iraq but assert venue in Washington, D.C. because Defendants are federal contractors.  Plaintiffs hang their case for venue on alleged contract-related communications and investigations in this District, but such communications and investigations are no part—much less a "substantial part"—of the alleged tortious actions and injuries giving rise to Plaintiffs' claims.

### C.  Plaintiffs' hypothetical about venue with different defendants and different pleadings is not properly before the Court.

Plaintiffs hint in a footnote that they might dismiss their claims against Mr. Prince.  If they did so, they suggest, venue would be proper in this Court under Section 1391(b)(1).  Pls. Opp'n 11 n.6.  This is the second time Plaintiffs have made this suggestion, and it is the second time it is wrong.

First, the Complaints do not assert Section 1391(b)(1) as a basis for venue in the District of Columbia.  It "is a dubious proposition at best" that "plaintiffs can amend their complaint" to add

11

a new basis for venue "through a statement in their opposition." *Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 13 n.6 (D.D.C. 2003).

Second, Mr. Prince is still a Defendant in this action.  Plaintiffs have repeatedly amended their Complaints—they have now proposed a Third Amended Complaint in *Abtan*—and yet Plaintiffs have not dropped their claims against Mr. Prince.  Plaintiffs might, of course, try to amend the Complaints yet again to drop the claims against Mr. Prince.  But until they do so, Plaintiffs' non-binding, speculative suggestion of what they are willing to do has absolutely no legal relevance.  *See Arbitraje Casa de Cambio, S.A. de C.V. v. United States Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation marks omitted); *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006) (noting that "absent a motion [for leave to amend], there is nothing to 'be freely given'").  This Court should make its decision on the basis of the Complaints before it, not by reference to imaginary pleadings that Plaintiffs have not filed.

Third, even if the Complaints did assert Section 1391(b)(1) as a basis for venue and did not name Mr. Prince as a Defendant, venue would still be improper in the District of Columbia.  As a threshold matter, Plaintiffs incorrectly suggest that the corporate Defendants have waived any objection to venue in this Court by not objecting to personal jurisdiction in their initial motion to dismiss.  Pls. Opp'n 5 n.3.  Plaintiffs ignore the only decision on that subject in the District Court for the District of Columbia—which squarely held that a failure to object to personal jurisdiction does ***not*** waive venue objections for a corporate defendant.  *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 19 (D.D.C. 2002) (interpreting the plain text of the statute, which provides that a corporate defendant "'shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction *at the time the action is commenced*,'" as requiring "an independent inquiry

into the basis for personal jurisdiction") (quoting and adding emphasis to 28 U.S.C. § 1391(c)). This decision rejected the cases relied upon by Plaintiffs, and it has since been expressly relied upon by at least one other federal court, the Southern District of New York. *Bell v. Classic Auto Group, Inc.*, No. 04 Civ. 0693, 2005 WL 659196, at *5 (S.D.N.Y. Mar. 21, 2005) (unpublished); *see also S.L. Sakansky & Assocs., Inc. v. Allied Am. Adjusting Co.*, No. 3:05-cv-708-J-32, 2006 WL 948055, at *2 n.3 (M.D. Fla. Apr. 12, 2006) (unpublished) (recognizing *DSMC* as authority on the question).[13]

## II.    Venue-Related Discovery Is Unnecessary.

Plaintiffs seek venue-related discovery as a way to forestall this Court's dismissal or transfer of these cases. Pls. Opp'n 10-11. Plaintiffs offer two reasons for such discovery. First, "this Court would not have denied Defendants' motion to dismiss if no 'plausible basis' for venue existed." *Id.* at 10. This is a *non sequitur*—this Court denied the previous motion to dismiss for lack of venue **without prejudice** when it consolidated *Abtan* and *Albazzaz* and granted leave for Plaintiffs to amend the operative complaints. Minute Order, Mar. 28, 2008. Such a disposition indicates nothing about the strength or weakness of the motion denied.

Second, Plaintiffs seek discovery because there are "'venue facts * * * within the knowledge of the defendant' which 'may not be known to the plaintiff.'" Pls. Opp'n 11 (quoting *Ferraioli v. Cantor*, 259 F. Supp. 842, 847 (S.D.N.Y. 1966)). But the facts to which Plaintiffs

---

[13]    Plaintiffs' failure to acknowledge *DSMC* in this regard is particularly striking given that Plaintiffs cite *DSMC* in their opposition (*see* Pls. Opp'n 12), yet they fail to bring to the Court's attention the portion of the opinion addressing, and rejecting, their waiver argument. This omission is egregious as this is the **second** time Plaintiffs have made this mistake even though the error has been brought to their attention in prior briefing: In their previous opposition, Plaintiffs cited *DSMC* and yet failed to note that it contradicted their waiver argument; Defendants noted the error in their previous reply brief. *See* Defs. Previous Reply Br. 11 n.8.

point—"contracts formed with government entities or business located in this District" (Pls. Opp'n 11)—are not "venue facts" because they have nothing to do with venue under Section 1391(b)(2) for alleged torts committed in Iraq.[14]

Plaintiffs have no plausible basis for venue and they offer no reason to think that discovery would change that fact. Because "a substantial part of the events or omissions giving rise to" Plaintiffs' claims could not possibly have occurred in the District of Columbia, no discovery is needed and Complaints should be dismissed for lack of venue. *See Mwani v. Bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005) (upholding a denial of jurisdiction-related discovery because the court could "not see what facts additional discovery could produce that would affect [the] juris-dictional analysis") (internal quotation marks omitted); *see also United States v. Toushin*, 714 F. Supp. 1452, 1460 (M.D. Tenn. 1989) (denying motion for venue-related discovery because the court was disposing of the venue motions and had "no reason to prolong this matter with unnec-essary discovery").

## III. Dismissal of All Claims Is Appropriate.

Given the obvious error Plaintiffs make in arguing for venue in this District under Section 1391(a)(3) and Section 1391(b)(2), this Court should dismiss both Complaints pursuant to 28 U.S.C. § 1406(a). Plaintiffs make no effort to rebut or even engage the arguments for dismissal rather than transfer that Defendants made in their opening brief. *See* Defs. Br. 10-13. Indeed, Plaintiffs persist in erroneously arguing against transfer under ***Section 1404(a)***. Pls. Opp'n 11-

---

[14] Puzzlingly, Plaintiffs refer to contracts made by Total Intelligence Solutions, LLC ("Total Intelli-gence"). Total Intelligence is no longer a Defendant in this case, and the declaration that Plaintiffs cite appeared in earlier briefing when Total Intelligence was a party. Plaintiffs make no response to and thus concede Defendants' request that this Court strike the references to Total Intelligence in paragraphs 24 and 26 of the Second Amended Complaint in *Abtan* and paragraphs 9 and 11 of the Amended Complaint in *Albazzaz*. *See* Defs. Br. 2 n.4, 13.

13; *cf.* Pls. Previous Opp'n 10-11.  Defendants, however, have consistently argued for dismissal (or in the alternative transfer) under ***Section 1406(a)***.  Although Defendants have already corrected Plaintiffs' misapprehension once before,  *see* Defs. Previous Reply Br. 2, it appears necessary to do so again.  It is appropriate for this Court to dismiss (or in the alternative transfer) these cases under Section 1406(a) because that provision controls when a case is filed in a district, as here, where venue is improper, not merely inconvenient.  Section 1404(a) applies by its own terms to transfers "to any ***other*** district or division where [the case] might have been brought." 28 U.S.C. § 1404(a) (emphasis added).  As demonstrated here and in Defendants' opening brief, dismissal is appropriate because Plaintiffs have repeatedly—with three different filed complaints and a fourth proposed complaint in *Abtan*—made no effort to connect their allegations to any plausible basis for venue in this Court.

Plaintiffs try to escape dismissal by urging that their choice of forum is entitled to deference, Pls. Opp'n 6, but this argument and the authority Plaintiffs cite for it are not on point.  All three cases Plaintiffs cite concern transfer under Section 1404(a), not Section 1406(a).  In other words, courts show deference to a plaintiff's ***proper*** choice of venue.  But that proposition has no bearing where, as here, a plaintiff's choice of venue is ***improper***.

* * * * *

Defendants respectfully request that the Court grant their Motion and enter an order dismissing in their entirety the Second Amended Complaint in *Abtan* and the Amended Complaint in *Albazzaz*; or, in the alternative, transferring both cases to the U.S. District Court for the Eastern District of Virginia, where Plaintiffs concede that venue is proper.  Pls. Opp'n 6.

Respectfully submitted,

/s/ Michael Lackey

15

Michael Lackey  (#443362)
Andrew Pincus (#370726)
Peter White  (#468746)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

*Counsel for Defendants*

Dated: April 29, 2008

16

## CERTIFICATE OF SERVICE

I, Peter White, an attorney, certify that on April 29, 2008, I caused true and correct copies of the foregoing Reply and its supporting documents, and the attached Proposed Order to be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who have registered for receipt of documents filed in this manner:

Shereef Hadi Akeel (admitted *pro hac vice*)
AKEEL & VALENTINE, PLC
888 West Big Beaver
Suite 910
Troy, MI 48084
(248) 269-9595

Susan L. Burke (414939)
William T. O'Neil (426107)
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
(215) 971-5058

In addition, on this same date, I caused the above-mentioned Reply to be served upon the following counsel of record via first-class mail:

Michael A. Ratner
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6439

/s/ Peter White
Peter White
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

*Counsel for Defendants*

DECLARATION OF GARY JACKSON

I, Gary Jackson, subject to penalty of perjury, state the following:

1.    I am President of Blackwater Lodge and Training Center, Inc. ("Blackwater Lodge").

2.    Attached to this Declaration as Exhibit A is a true copy of the signed "Amendment of Solicitation/Modification of Contract" form for the relevant contract between Blackwater Lodge and the Office of Acquisition Management of the United States Department of State.

3.    The address of the Office of Acquisition Management, as listed in Exhibit A, is at Rosslyn Station, Arlington, Virginia.

I have provided this Declaration for use in the *Abtan et al. v. Blackwater Worldwide et al.* and *Albazzaz et al. v. Blackwater Worldwide et al.* lawsuits, both of which I understand are pending in federal court in the District of Columbia.

I declare under penalty of perjury that the foregoing are true and correct.

Executed on:   03·06·08          Signature:   _____

                                 Print Name:  GARY JACKSON

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | 1 CONTRACT ID CODE | Page 1 of 2 |
|---|---|---|

| 2 AMENDMENT/MODIFICATION NO. 004 | 3 EFFECTIVE DATE 04/06/2006 | 4 REQUISITION/PURCHASE REQ NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|

| 6. ISSUED BY | CODE | LMAQM19 |
|---|---|---|
| OFFICE OF ACQUISITION MANAGEMENT (A/LM/AQM) PO BOX 9115, ROSSLYN STATION, US DEPARTMENT OF STATE ARLINGTON, VA, UNITED STATES 22219 |

| 7. ADMINISTERED BY (If other than Item 6) | CODE | LMAQM19 |
|---|---|---|
| OFFICE OF ACQUISITION MANAGEMENT (A/LM/AQM) PO BOX 9115, ROSSLYN STATION, US DEPARTMENT OF STATE ARLINGTON, VA, UNITED STATES 22219 |

Contact  Paul Desilets    Telephone  703-875-4815

| 8 NAME AND ADDRESS OF CONTRACTOR    (No., street, county, State and Zip Code) |
|---|
| DUNS No. 012418161 |
| BLACKWATER LODGE & TRAINING 850 PUDDIN RIDGE RD MOYOCK, NC, UNITED STATES 27958-8867 |
| CODE  1    FACILITY CODE |

| 9A AMENDMENT OF SOLICITATION NO |
|---|
| 9B DATED (SEE ITEM 11) |
| (X) | 10A MODIFICATION OF CONTRACT/ORDER NO. SAQMPD05D1098 |
| (X) | 10B DATED (SEE ITEM 13) 06/07/2005 |

### 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

| ☐ | The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers | ☐ is extended, | ☐ is not extended. |
|---|---|---|---|

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

### 12. ACCOUNTING AND APPROPRIATION DATA   (If required)
No Funding Information

### 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| ☐ | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| ☐ | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF AUTHORITY OF FAR 43.103(b). |
| ☑ | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: 52.243-1 CHANGES - FIXED PRICE - ALTERNATE I (APR 1984) |
| ☐ | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT.  Contractor  ☐ is not,  ☒ is required to sign this document and return  1  copies to the issuing office.

### 14. DESCRIPTION OF AMENDMENT/MODIFICATION   (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

CONTRACT S-AQMPD-05-D-1098 IS HEREBY MODIFIED AS FOLLOWS:

SEE ATTACHED SUMMARY OF CHANGES.

NOTE: THE FILES WILL BE EMAILED IN LIEU OF MAILING OR FAXING.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) Paul Desilets |
|---|---|
| 15B. CONTRACTOR/OFFEROR _____ (Signature of person authorized to sign) | 15C DATE SIGNED | 16B United States of America BY _____ (Signature of Contracting Officer) | 16C DATE SIGNED 4/7/06 |

| NSN 7540-01-152-8070 PREVIOUS EDITION UNUSABLE | STANDARD FORM 30 (REV. 10-83) Prescribed by GSA FAR (48 CFR) 53.243 |
|---|---|

## AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | | | 1. CONTRACT ID CODE | Page 1 of 2 |
|---|---|---|---|---|

| 2. AMENDMENT/MODIFICATION NO. 004 | 3. EFFECTIVE DATE 04/06/2006 | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. *(if applicable)* |
|---|---|---|---|

| 6. ISSUED BY                                      CODE   LMAQM19 |
|---|
| OFFICE OF ACQUISITION MANAGEMENT (A/LM/AQM) |
| PO BOX 9115, ROSSLYN STATION, US DEPARTMENT OF STATE |
| ARLINGTON, VA  UNITED STATES 22219 |

| 7. ADMINISTERED BY *(if other than Item 6)*   CODE   LMAQME |
|---|
| OFFICE OF ACQUISITION MANAGEMENT (A/LM/AQM) |
| PO BOX 9115, ROSSLYN STATION, US DEPARTMENT OF STATE |
| ARLINGTON VA  UNITED STATES 22219 |

**Contact:** Paul Desilets          **Telephone** 703-875-4815

| 8. NAME AND ADDRESS OF CONTRACTOR   *(No. street county State and Zip Code)* | | |
|---|---|---|
| BLACKWATER LODGE & TRAINING | | |
| 850 PUDDIN RIDGE RD | | |
| MOYOCK, NC  UNITED STATES 27958-8867 | | DUNS No. 012418161 |
| CODE   1 | FACILITY CODE | |

| | |
|---|---|
| 9A. AMENDMENT OF SOLICITATION NO | |
| 9B DATED *(SEE ITEM 11)* | |
| 10A. MODIFICATION OF CONTRACT/ORDER NO. SAQMPD05D1088 | (X) |
| 10B DATED *(SEE ITEM 13)* 06/07/2005 | (X) |

### 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[ ] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [ ] is extended  [ ] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA   *(if required)* |
|---|
| No Funding Information |

### 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| [ ] | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| [ ] | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF AUTHORITY OF FAR 43.103(b). |
| [ ] | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: 52.243-1 CHANGES - FIXED PRICE - ALTERNATE I (APR 1984) |
| [ ] | D. OTHER *(Specify type of modification and authority)* |

E. IMPORTANT:   Contractor [ ] is not. [X] is required to sign this document and return _1_ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION   *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*
CONTRACT S-AQMPD-05-D-1098 IS HEREBY MODIFIED AS FOLLOWS:

SEE ATTACHED SUMMARY OF CHANGES.

NOTE: THE FILES WILL BE EMAILED IN LIEU OF MAILING OR FAXING.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER *(Type or print)* | 16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)* | |
|---|---|---|
| FRED ROITZ, VP of Contracts + Comp. | Paul Desilets | |
| 15B. CONTRACTOR/OFFEROR | 16B. United States of America | 16C. DATE SIGNED |
| *(Signature of person authorized to sign)* 7 APRIL 2006 | *(Signature of Contracting Officer)* | |

| 15C. DATE SIGNED | | |
|---|---|---|

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

| Line Item Summary | Document Number | | Title | | Page |
|---|---|---|---|---|---|
| | SAQMPL05D1098-M004 | | WPPS-Blackwater | | 2 of 2 |

No Funding Information

| Line Item No. | Description | Quantity | Unit | Unit Price | Total Cost (Includes Discounts) |
|---|---|---|---|---|---|
| | No Changed Line Item Fields | | | | |
| | | | | Previous Total: USD | |
| | | | | Modification Total: USD | 0.00 |
| | | | | Grand Total: USD | |