IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ESTATE OF ABTAN, *et. al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 07-1831 (RBW) |
| | ) | |
| v. | ) | |
| | ) | |
| BLACKWATER LODGE AND TRAINING | ) | |
| CENTER, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Blackwater's Opposition to the Motion for Leave to File a Third Amended

Complaint does not provide this Court with any legally-sound reason to deny leave to

amend at this early juncture.  Blackwater does not – and cannot – demonstrate the

presence of any of the "adverse factors" required to oppose leave to amend:  undue delay,

bad faith, prejudice to the defendants, or futility of the amendment.  *See Federal Rule of*

*Civil Procedure 15(a)*; *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Blackwater's only

legal argument – that spoliation cannot occur before a civil action is filed – is simply

wrong.  Lacking any legal basis to argue any of the Rule 15 adverse factors, Blackwater

instead attacks the motives and personal integrity of lead counsel, claiming that victims'

counsel filed the motion to amend in bad-faith in order to "inject sensational and

unfounded allegations" into the record for publicity purposes.  *See Blackwater*

*Opposition at 3, n 4.*  Such an attack is legally-irrelevant "table pounding" of the type a

Defendant uses when neither law nor facts support their argument.  Nonetheless, because

victims' counsel has not had the privilege of appearing before this Court in the past,[1] the

following sets forth in detail why the victims' legal team reached the reasoned conclusion

that the victims needed to file a motion to amend.  Section I responds to Blackwater's

claim of futility; Section II responds to Blackwater's allegation of bad faith.

I.     **THE THIRD AMENDED COMPLAINT ALLEGES A VALID SPOLIATION CLAIM**.

The victims state a legally-cognizable claim for spoliation in the Third Amended

Complaint.  Blackwater asserts that the victims' spoliation claim fails because the

destruction of evidence related to the vehicles predated the filing of the civil complaint.

*Blackwater Opposition at 3 n. 1*.  This is wrong.

In *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 854 (D.C. 1998), the District of

Columbia Court of Appeals recognized a tort for spoliation of evidence[2] with the

following elements:

> (1) existence of a *potential* civil action; (2) a legal or contractual
> duty to preserve evidence which is relevant to that action; (3)
> destruction of that evidence by the duty-bound defendant; (4)
> significant impairment in the ability to prove the potential civil
> action; (5) a proximate relationship between the impairment of the
> underlying suit and the unavailability of the destroyed evidence;
> (6) a significant possibility of success of the potential civil action if
> the evidence were available; and (7) damages adjusted for the
> estimated likelihood of success in the *potential* civil action
> (emphasis added).

---

[1] William Gould, a new partner at Burke O'Neil LLC, appeared before this Court on
several occasions during his twelve-year service with the Department of Justice as an
Assistant United States Attorney (Criminal) in D.C. and Charlottesville, Virginia.

[2] Blackwater's claim that D.C. law may not apply is not a basis for denying victims'
motion for leave to amend.  The victims are not required to include choice of law analysis
in their complaint.  *See Fisher v. Greater Socialist People's Libyan Arab Jamahiriya*,
2008 WL 798645 (D.D.C.) at *3 ("plaintiffs need not set forth their *choice of law*
contentions in their complaint"); *Dammarell v. Islamic Republic of Iran,* 370 F.Supp.2d
218, 221 (D.D.C.2005) (noting that the court is "unaware of any law…that would
require" plaintiffs to "include the choice of law determination in the Complaint itself").

The court clearly states that the plaintiffs must only show the existence of a "*potential*

civil action," not a currently pending action.  *Id.*  The court explains Plaintiffs do *not*

need to prove that evidence was destroyed with the specific intent of impairing a civil

suit.   Indeed, they do not need to prove that evidence was willfully or intentionally

destroyed; negligent or reckless spoliation of evidence is also grounds for recovery.  *Id.* at

854 (D.C. 1998).

In *Holmes v. Amerex Rent-A-Car*, the evidence in question was destroyed in June

of 1989, and the plaintiffs' lawsuit was filed six months later in November 1989.  *Id.* at

847-848.   Nevertheless, the D.C. Circuit found that the plaintiff was potentially entitled

to recover for spoliation.  *Holmes v. Amerex Rent-A-Car*, 180 F.3d 294, 298 (D.C. Cir.

1999).  The duty to preserve evidence may arise before a complaint is filed.  *See, e.g.,*

*Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("The duty to

preserve material evidence arises not only during litigation but also extends to that period

before the litigation when a party reasonably should know that the evidence may be

relevant to anticipated litigation."); *Kronisch v. United States*, 150 F.3d 112, 126 (2nd

Cir. 1998) (duty to preserve evidence may arise "when a party should have known that

the evidence may be relevant to future litigation.").[3]

Clearly, Blackwater cannot credibly argue that it could not have foreseen the

likelihood of civil litigation.  The very day Blackwater employees massacred and injured

scores of unarmed innocents in Nisoor Square, Blackwater knew it confronted a high risk

---

[3] Blackater's reliance on the "special relationship" test from *Holmes* is unpersuasive.  In *Holmes,* the party against whom the spoliation claim was made was not the original tort defendant, but a third party.  The "special relationship" test was employed to determine whether the third party had an independent duty to preserve evidence.  That situation is not present here.

of both civil and criminal prosecution.  Blackwater knew it had a legal obligation to

preserve evidence relevant to the investigation into the events at Nisoor Square.

Blackwater knew that a forensic examination of the vehicles would be critical evidence

for any investigation into the shootings.  Indeed, Blackwater staged the creation of self-

serving photographs of the vehicles to bolster its legal defense.  (Note, it appears from

press reports that Blackwater took these photographs during the period when Blackwater

had full custody and control over the vehicles, and was actively refusing to permit anyone

from the military or law enforcement to examine the vehicles.)  Such conduct evidences

Blackwater's knowledge that the post-massacre state of the vehicles was important

evidence that would make the civil prosecution more successful.  Blackwater clearly had

a legal duty to preserve the vehicles in their original state as well as to preserve

documentary evidence relevant to the multiple pending federal investigations into

Blackwater misconduct.  In short, the victims easily meet the *Holmes v. Amerex Rent-a-*

*Car* requirement that the defendant must have a legal duty to preserve the evidence in

question, and thus the motion to amend to add a spoliation claim is not futile.

      II.      **VICTIMS' COUNSEL'S MOTION TO AMEND WAS NOT FILED IN BAD FAITH.**

      After victims' counsel learned from a former Blackwater employee that

Blackwater was destroying documents located at its Moyock headquarters, counsel

immediately contacted both the Department of Justice and defense counsel.  As is

evidenced by the correspondence attached to Blackwater's Opposition, victims' counsel

initially sought to obtain immediate and expedited discovery.  That approach took many

weeks, and culminated in Blackwater suggesting that the parties schedule a conference

call with this Court to resolve what they characterized as a discovery "dispute." Victims'

counsel never viewed the matter as a typical discovery dispute because Blackwater was

not refusing discovery to which the victims were entitled under the federal rules, but

rather was simply refusing to cooperate voluntarily in commencing discovery on

spoliation in advance of the Rule 26(f) conference. *See Declaration of Susan L. Burke*,

¶3 (hereinafter "*Burke Dec.*"), attached as Exhibit 1.

By the time the discussions had reached the point of trying to schedule a

conference call with the Court, several other factors influenced the analysis by victims'

counsel. First, Blackwater's competent defense counsel had successfully engaged

victims' counsel in enough correspondence back and forth that victims' counsel would be

hard-pressed to persuade the Court during a telephonic conference that there was an

emergency mandating expedited discovery outside the scope of the federal rules.

Victims' counsel simply could not allege that the destruction remained ongoing, as they

would have done had they brought the matter to the Court immediately, because counsel

obtained reliable information that the destruction stopped after victims' counsel's calls to

the Department of Justice and defense counsel. *Burke Dec.* at ¶4.

Second, victims' counsel provided the Department of Justice with the information

regarding potential document destruction. The Department began to investigate. *Burke*

*Dec.* at ¶4.

Third, and importantly, during the intervening period between when victims'

counsel initially contacted Blackwater about the destruction (March 18, 2008) and when

the victims filed the motion to amend (April 25, 2008), the victims obtained new and

compelling information about Blackwater's repainting of the vehicles. Blackwater had

been telling the media that the vehicles had to be repainted because they were needed by

the Department of State.  The victims learned from a new source – a former Blackwater

employee (not the same source of the information about the document destruction) – that

Blackwater was lying to the media.  In fact, Blackwater had a regular and routine practice

of sending vehicles to a different contractor for repainting.  After the September 16,

2008, massacre, Blackwater had plenty of vehicles available for Department of State use.

*Burke Dec.* at ¶2.

Given the passage of time, the involvement of the Department of Justice, the lack

of evidence relating to continued document destruction, and new and compelling

evidence about the vehicle repainting, victims' counsel perceived two alternatives:  move

to amend and conduct discovery into the spoliation as soon as formal discovery began, or

convene a telephonic conference with the Court and seek to expedite discovery on

spoliation before the Court had yet ruled on Blackwater's motion to transfer venue.

The victims' legal team decided the former was the more prudent approach.

Defense counsel already had stated Blackwater's position: "any depositions or other

document discovery would be premature given the procedural posture of this case, where

discovery is not yet permitted and the *court's jurisdiction even to hear this case is*

*seriously in question.*"  *Blackwater Opp., Attachment 1, p. 1* (emphasis added).  Thus, it

was clear that Blackwater would attempt to turn any telephonic conference into an

opportunity to argue venue and transfer to Virginia, an issue on which the Court has not

indicated any need for oral argument.

As a result of this decision, victims' counsel contacted defense counsel, and

sought consent to the motion to amend.  Despite the fact that discovery had not

commenced, and Blackwater was not prejudiced in any way by the amendment,

Blackwater again opposed the motion to amend, just as Blackwater had opposed the

earlier motion to amend seeking to add additional plaintiffs.  Clearly, filing a motion for

leave to amend the complaint does not violate the Court's standing order's provision on

the procedures for resolving discovery disputes; a motion for leave to amend is not a

discovery dispute or a discovery motion.[4]  *See* General Order and Guidelines For Civil

Cases (ECF) ¶ 8 (Walton, J.).

Blackwater's claim that the motion to amend was made in bad faith in order to

obtain press coverage simply lacks any support.  The filing of the motion to amend was a

public act, and freely available to the press and the public.  It is a matter of record.  As

much as Blackwater may wish to keep a low profile and avoid discussion about whether

the United States government should be using the services of a company engaged in

repeated criminal conduct, filing a motion to amend clearly does not violate the Court's

December 19, 2007, order.  *Dkt. # 8.*    That Order recognized that "the public has an

interest in receiving information about matters that are in litigation," and only spoke to to

the need to refrain from introducing into the public domain information *not on record.*

Blackwater cannot point to any of the press reports regarding the motion to amend which

contain any information from victims' counsel other than information on the record.[5]

---

[4] Discovery on any spoliation of evidence by Blackwater will eventually be needed not
because the victims intend to engage in a "fishing expedition," *Opp. at 3, n.1*, but because
the facts and evidence regarding spoliation are within the defendants' knowledge and
control.  *See Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) (pleading on information
and belief is appropriate with regard to "information particularly within [defendant's]
knowledge and control.")

[5] The multiple press reports attached to Blackwater's Opposition are in fact all simply re-
prints of the original Associated Press report, and none quotes victims' counsel.

For all the foregoing reasons, the victims respectfully request that the Court grant them leave to amend their complaint to add a spoliation claim. If granted, there is no reason Blackwater needs to rebrief venue for a third time. That has been fully briefed by Blackwater on two occasions, and is ready for resolution by this Court. Adding a spoliation claim has no bearing on Blackwater's arguments on venue and transfer. Accordingly, the victims respectfully request that the Court grant their motion for leave to amend, deny Blackwater's motion to transfer venue, and order Blackwater to answer the Third Amended Complaint.

Respectfully submitted,

\_\_\_/s/ Susan L. Burke_____
Susan L. Burke (D.C. Bar # 414939)
William T. O'Neil (D.C. Bar #426107)
William F. Gould (D.C. Bar #428468)
Katherine R. Hawkins
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
Telephone:    (215) 971-5058
Facsimile:    (215) 482-0874

Michael Ratner
Katherine Gallagher
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:    (212) 614-6455
Facsimile:    (212) 614-6499

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
888 West Big Beaver
Suite 910
Troy, MI 48084
Telephone:    (248) 269 -9595
Facsimile:    (248) 269-9119
*Counsel for Victims*

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ESTATE OF HIMOUD SAED ABTAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 07-cv-1831 (RBW) |
| v. | ) | |
| | ) | |
| BLACKWATER WORLDWIDE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF SUSAN L. BURKE**

**SUSAN L. BURKE** hereby declares as follows:

1.      I have been a member in good standing of the bar of the District of Columbia since 1987.  I serve as lead counsel for the victims in this matter.

2.      During the intervening period between when victims' counsel initially contacted Blackwater about the destruction (March 18, 2008) and when the victims filed the motion to amend (April 25, 2008), the victims learned from a new source – a former Blackwater employee – that Blackwater had a regular and routine practice of sending vehicles to a different contractor for repainting, and that after the September 16, 2008, massacre, Blackwater had plenty of vehicles available for Department of State use.

3.      Although I sought Blackwater's cooperation with voluntarily discovery, I did not view Blackwater's refusal to cooperate as creating a "discovery dispute" as that term is typically used because Blackwater was not refusing discovery to which the victims were necessarily entitled to receive under the Federal Rules of Civil Procedure.

4.      By the time the discussions had reached the point of trying to schedule a conference call with the Court, several other factors influenced our decision to amend the complaint rather than convene a telephonic conference with the Court.  These factors included the passage of time, the Department of Justice's willingness to investigate, the lack of evidence relating to continued document destruction, and new and compelling evidence about the spoliation of the vehicles.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 19, 2008 in Philadelphia, PA.

_____
Susan L. Burke

2